# EXHIBIT

# A

DUPLICATE

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 0 6 2008

JAMES N. HATTEN, Clerk
By:                    Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| JOHN BAGNATO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| PHOEBE PUTNEY HEALTH SYSTEM, | ) | 1:07-CV-00030-WLS* |
| INC., PHOEBE PUTNEY MEMORIAL | ) | |
| HOSPITAL, INC., JOEL WERNICK, | ) | * Action is pending in the |
| LANGLEY AND LEE, LLC, | ) |   United States District |
| CARL RICHARD LANGLEY, | ) |   Court for the Middle |
| LARRY J. MCCORMICK AND | ) |   District of Georgia |
| ASSOCIATES, LLC, | ) | |
| LARRY J. MCCORMICK, | ) | Miscellaneous Action No. |
| WORK DYNAMICS, INC., | ) | |
| STEPHEN B. CHENOWETH, | ) | 1:08-MI-0204 |
| JOHNDOES NO. I THROUGH V, | ) | |
| ABC CORPORATION, and | ) | |
| XYZ CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

---

### CERTAIN DEFENDANTS' MOTION TO QUASH
### THIRD-PARTY SUBPOENA ISSUED TO CHARLES
### HAYSLETT AND/OR MOTION FOR PROTECTIVE ORDER

---

COME NOW Defendants Phoebe Putney Health System, Inc., Phoebe

Putney Memorial Hospital, Inc., Joel Wernick, Langley & Lee, LLC and Carl

Richard Langley, ("Defendants"),[1] in the case pending in the Middle District of Georgia, and pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, respectfully move this Court to quash the Rule 45 subpoena issued to Charles Hayslett ("Hayslett") and/or enter a protective order as to the documents sought by the non-party subpoena and in support of their motion respectfully show:

1.     Plaintiff's subpoena seeks materials not related to the claims in the lawsuit currently pending in the United States District Court for the Middle District of Georgia, and the subpoena is unlimited in time and scope and thus seeks materials beyond the scope of discovery in this case.

2.     Some of the materials sought by Plaintiff are protected by the attorney-client privilege and/or work product doctrine.[2]

3.     In support of their joint motion, Defendants rely on the Brief In Support of Certain Defendants' Motion to Quash third-Party Subpoena Issued To Charles Hayslett.

---

[1]     The remaining defendants, Larry J. McCormick, Larry J. McCormick Associates, LLC, Work Dynamics, Inc., and Stephen B. Chenoweth are not parties to this motion as the documents subject to the subpoena do not directly impact a right or privilege belonging to them.

[2]     The issue regarding privilege may be rendered moot by the Court's ruling on the scope of discovery.  Therefore, Defendants request the Court first rule on the issue of the scope of discovery.  If the Court agrees with Defendants, there will be no need to address the privilege issue as those documents will be outside the scope of discovery.

4.      Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the

Certification of Katherine Ventulett Hernacki, counsel for Defendants in the

United States District Court for the Middle District of Georgia, is attached hereto

as Exhibit A.

5.      For the foregoing reasons, this Court should quash the subpoena and

enter a protective order as to the documents requested.

This 6th day of June, 2008.

*/s/ L. Lin Wood*
L. Lin Wood
Georgia Bar No.:  774588
Marlo Orlin Leach
Georgia Bar No. 442216
Katherine Ventulett Hernacki
Georgia Bar No.:  727027
Paige Arden Stanley
Georgia Bar No.:  675135
Margaret M. Kane
Georgia Bar No. 330531

**POWELL GOLDSTEIN LLP**
One Atlantic Center
Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:   (404) 572-6600
Facsimile:   (404) 572-6999

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| JOHN BAGNATO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION FILE NO.: |
| PHOEBE PUTNEY HEALTH SYSTEM, | )   1:07-CV-00030-WLS* |
| INC., PHOEBE PUTNEY MEMORIAL | ) |
| HOSPITAL, INC., JOEL WERNICK, | ) * Action is pending in the |
| LANGLEY AND LEE, LLC, | )   United States District |
| CARL RICHARD LANGLEY, | )   Court for the Middle |
| LARRY J. MCCORMICK AND | )   District of Georgia |
| ASSOCIATES, LLC, | ) |
| LARRY J. MCCORMICK, | ) Miscellaneous Action No. |
| WORK DYNAMICS, INC., | ) |
| STEPHEN B. CHENOWETH, | ) |
| JOHNDOES NO. I THROUGH V, | ) _____ |
| ABC CORPORATION, and | ) |
| XYZ CORPORATION, | ) |
| | ) |
|     Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of June, 2008, the foregoing pleading

was served on the following attorneys of record by First Class Mail:

| | |
|---|---|
| Timothy J. Buckley, III | Ralph W. Powell, Jr. |
| Buckley Brown PC | Alex J. Kaplan |
| Suite 1010 | McCall Williams Wilmot & Powell LLC |
| 2970 Clairmont Road, NE | Post Office Box 71747 |
| Atlanta, GA  30329 | Albany, GA  31708 |

Bryan A. Vroon
Vroon & Crongeyer LLP
Suite 1088
1718 Peachtree Street
Atlanta, GA  30309

Victor L. Moldovan
Phears and Moldovan
Suite 2050
The Lenox Building
3339 Peachtree Road
Atlanta, GA  30326

Alfred N. Corriere
Vansant & Corriere, LLC
PO Box 347
Albany, GA  31702-0347

and served by First Class Mail upon counsel for Charles Hayslett as follows:

Mark S. Marani, Esq.
Cohen Pollock Merlin & Small, P.C.
Suite 1600
3500 Riverwood Parkway
Atlanta, GA  30339

*/s/ Katherine Ventulett Hernacki*
Katherine Ventulett Hernacki
Georgia Bar No.:  727027

**POWELL GOLDSTEIN LLP**
One Atlantic Center
Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:  (404) 572-6600
Facsimile:  (404) 572-6999

Attorney for Defendants

5139364

# EXHIBIT

# A

## CERTIFICATION OF COUNSEL

Pursuant to Rule 26(c) and Local Rule 37.2of the Federal Rules of Civil Procedure, I hereby certify that prior to filing this motion, I personally communicated with my adversary by telephone on May 23, 28, and 30, 2008, and in writing on May 29, 2008, and no agreement regarding relief could be reached. A true and correct copy of correspondence from Katherine Ventulett Hernacki to Alex Kaplan dated May 29, 2008 is attached hereto as Exhibit 1.  Counsel for Defendants Lin Wood also communicated with my adversary in writing on June 5, 2008.  A true and correct copy of correspondence from L. Lin Wood to Ralph Powell dated June 5, 2008 is attached hereto as Exhibit 2.

*/s/ Katherine Ventulett Hernacki*





Atlanta ▫ Washington ▫ Dallas

Resident in the Atlanta Office
KATHERINE VENTULETT HERNACKI, ESQ.
Direct Dial No.: (404) 572-6763
E-Mail Address: khernacki@pogolaw.com

May 29, 2008

**BY FACSIMILE – 229.888.3330**
and
**BY EMAIL – (akaplan@mccallphillips.com)**

Alex J. Kaplan, Esq.
McCall Phillips Williams & Powell, LLC
1101 Valley Road
Albany, Georgia 31707

> Re:   *Bagnato v. Phoebe Putney Health System, et al.*
> United States District Court for the Northern District of Georgia, Albany Division
> Civil Action File No.:  1:07-CV-00030-WLS

Dear Alex:

I am writing in follow up to our conversations of May 23d and 28th, in which we attempted to resolve certain disputes that have arisen in regard to the subpoenas served on Charles Hayslett and Dorothy Pirovano.

In summary, we were not able to reach any agreements. In terms of time limitation, however, you stated that Plaintiffs would agree to seek only documents relating to the financial relationship between Mr. Hayslett and Phoebe and/or Ms. Pirovano and Phoebe prior to the date on which the first Factoid was transmitted, in or about September, 2003 or the date of the onset of the "not for profit" litigation, whichever came earlier. Defendants do not concede that such documents are discoverable within the context of this litigation, however, and will not agree to produce such documents at this time.

In terms of scope, you indicated that Plaintiff contends that other lawsuits, such as the "not-for-profit" litigation and the suit initiated by Phoebe against Charles Rehberg, as well as certain business matters, such as issues relating to Grove Pointe Indemnity, are within the scope of discovery in this case. You did not, however, provide a justification for such a position. As we discussed, Defendants' position is that discovery is limited in this case to the claims set forth in your client's complaint and the defenses set forth in the answer to that complaint. Issues beyond Phoebe's investigation of the authors of the anonymous Factoids and the criminal prosecution that resulted fall outside the scope of discovery in this case.

Defendants will proceed to file motions to quash and objections to the respective subpoenas on Friday, May 30, 2008. Additionally, non-objectionable documents will be produced at that time. As we discussed, Defendants are amenable to providing a privilege log regarding any discoverable documents that are being withheld on the basis of attorney client privilege or work product protection. Upon reflection, however, it appears that the scope of

Alex J. Kaplan, Esq.
May 29, 2008
Page 2 of 2

discovery with respect to the subpoenaed documents must first be determined before a privilege log needs to be produced. Specifically, a review of the documents reveals that few, if any, documents will be withheld on the basis of privilege or other protection, if Defendants' are correct that only documents related to the claims and defenses in the lawsuit are discoverable. If, on the other hand, a court determines that the scope of discovery is more broad, Defendants will provide a privilege log listing any documents responsive to the subpoena and consistent with the court's order that are being withheld on the basis of privilege.

    Please feel free to contact me to discuss these issues further.

                                            Sincerely,

                                            Katherine Ventulett Hernacki
                                            For POWELL GOLDSTEIN LLP

KVH/b
cc:    Mark S. Marani, Esq. (By Fax)
       John H. Parker, Jr. (By Fax)

5128797





POWELL
GOLDSTEIN LLP

Atlanta ◦ Washington ◦ Dallas

Resident in the Atlanta Office
L. LIN WOOD, ESQ.
Direct Dial No.: (404) 572-6633
E-Mail Address: liwood@pogolaw.com

June 5, 2008

**BY FACSIMILE** – 229.888.3330
    and
**BY EMAIL** – (rpowell@mccallphillips.com)

Ralph W. Powell, Jr., Esq.
McCall Phillips Williams & Powell, LLC
1101 Valley Road
Albany, Georgia 31707

      Re:   *Bagnato v. Phoebe Putney Health System, et al.*
            United States District Court for the Northern District of Georgia, Albany Division
            Civil Action File No.: 1:07-CV-00030-WLS

Dear Ralph:

I am writing in regard to recent discussions between you and Katherine Hernacki in which you sought to confirm Defendants' position that certain matters are not related to the claims in this case and therefore not subject to discovery. This letter is in furtherance of our efforts to resolve a discovery dispute that has arisen in connection with your subpoenas served on Charles Hayslett and Dorothy Pirovano.

As Katherine discussed with you, Defendants do not believe that the truth or falsity of the Factoids are at issue in this case. The sole focus of each of the enumerated claims in Mr. Bagnato's complaint regards Phoebe's efforts to discover the identity of the Factoids' anonymous author. Likewise, Defendants have not placed the veracity of the Factoids in issue, as no counterclaims for defamation have been filed. Therefore, the substance of the Factoids, i.e., their truth or falsity, is irrelevant to this case. For the same reasons, other matters such as the Not For Profit Litigation and Grove Pointe Indemnity also are not related to the issues in this case, and therefore not discoverable. While Mr. Bagnato's *relationship* with these efforts is discoverable as it evidences his involvement in an anti-Phoebe campaign, motives as they relate to Phoebe, and his claim for damages, the substance of these issues is in no way related to the claims in this case.

In a related issue, Ms. Hernacki informed me that Alex Kaplan of your office referred to certain documents in your possession which may be protected by the attorney client privilege and work product doctrines. In discussing disputes that have arisen over the subpoenas served on Dorothy Pirovano and Charles Hayslett, Ms. Hernacki reiterated Defendants' position that, although we believe that few, if any, of the documents in Ms. Pirovano's or Mr. Hayslett's possession are within the scope of discovery in this case, many of the documents are subject to the attorney client privilege and work product protection. Mr. Kaplan stated that he believed that Defendants may have already produced certain documents that would fall within this category. We are currently looking into this issue and appreciate your candor in informing us of

Ralph W. Powell, Jr., Esq.
June 5, 2008
Page 2 of 2

this possibility. In the event that an inadvertent disclosure has been made, I trust that you will cooperate with us in returning any protected materials.

Please feel free to contact me to discuss these issues further.

Sincerely,



L. Lin Wood

LLW/b
5141142

**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

JUN 0 6 2008

JAMES N. HATTEN, Clerk
By: _____
          Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

JOHN BAGNATO,                                )
                                             )
           Plaintiff,                        )
                                             )
v.                                           )
                                             )        CIVIL ACTION FILE NO.:
PHOEBE PUTNEY HEALTH SYSTEM,                  )        1:07-CV-00030-WLS*
INC., PHOEBE PUTNEY MEMORIAL                  )
HOSPITAL, INC., JOEL WERNICK,                 )        * Action is pending in the
LANGLEY AND LEE, LLC,                         )          United States District
CARL RICHARD LANGLEY,                         )          Court for the Middle
LARRY J. MCCORMICK AND                        )          District of Georgia
ASSOCIATES, LLC,                             )
LARRY J. MCCORMICK,                          )        Miscellaneous Action No.
WORK DYNAMICS, INC.,                         )
STEPHEN B. CHENOWETH,                        )        1:08-MI-0204
JOHNDOES NO. I THROUGH V,                     )        _____
ABC CORPORATION, and                         )
XYZ CORPORATION,                             )
                                             )
           Defendants.                       )

---

**BRIEF IN SUPPORT OF CERTAIN DEFENDANTS' MOTION
TO QUASH THIRD-PARTY SUBPOENA ISSUED TO
CHARLES HAYSLETT AND/OR MOTION FOR PROTECTIVE ORDER**

---

COME NOW Defendants Phoebe Putney Health System, Inc., Phoebe

Putney Memorial Hospital, Inc., Joel Wernick, Langley & Lee, LLC and Carl

Richard Langley, ("Defendants"),[1] in the case pending in the Middle District of

---

[1]    The remaining defendants, Larry J. McCormick, Larry J. McCormick
Associates, LLC, Work Dynamics, Inc., and Stephen B. Chenoweth are not parties

Georgia, and hereby file their Brief in support of their Motion To Quash Third-Party Subpoena Issued To Charles Hayslett And/Or Motion For Protective Order.

## **INTRODUCTION**

This case arises out of a series of anonymous "Factoids" that were disseminated throughout the medical and business community in Albany, Georgia starting in September 2003. The Factoids contained insidious and unwarranted attacks and accusations regarding Defendant Phoebe Putney Memorial Hospital ("Phoebe")[2], a public hospital in Albany, Georgia, and its corporate officers and directors. Upon receipt of the Factoids, Phoebe conducted an investigation to ascertain the identity of the authors, one of which turned out to be Plaintiff. It is that investigation which forms the basis of Plaintiff's Complaint as Plaintiff claims that he was damaged as a result of Defendants' conduct in connection with that investigation.

This motion seeks to quash a third-party subpoena served by Plaintiff on Charles Hayslett ("Hayslett"), a non-party resident of the Northern District of Georgia. Hayslett's work for Defendants included consulting with Phoebe and its counsel on various matters related to the health care industry and working with Phoebe and its counsel on various legal matters.

---

to this motion as the documents subject to the subpoena do not directly impact a right or privilege belonging to them.

[2]    Defendants Phoebe Putney Memorial Hospital and Phoebe Putney Health System are collectively referred to herein as "Phoebe".

- 2 -

Hayslett and his public relations company were retained by certain of the Defendants as far back as 2000 to assist in various aspects related to health care and Phoebe. In addition to its public relations services, Hayslett also assisted Phoebe and its counsel in developing certain legal strategies.

Most of the documents in Hayslett's possession that relate to Phoebe have nothing to do with the issues in this lawsuit. Nevertheless, on or about March 17, 2008, Plaintiff served a subpoena on Hayslett seeking production of fourteen categories of documents. (A true and correct copy of the subpoena is attached hereto as Exhibit A).[3]

Rather than attempting to seek documents that are narrowly tailored to the facts of this case, however, Plaintiff instead seeks production of virtually all documents in the possession of Hayslett which, *inter alia*, contain the word Phoebe or which relate to matters and litigation not at issue in this case.

Additionally, given the breadth of the requests, some of the documents requested are protected by the attorney-client privilege and/or the work product doctrine. Although these privileged documents do not pertain to the identity or investigation of the authors of the Factoids, and therefore are not reasonably

---

[3] The parties agreed to extend the time for Defendants and Hayslett to object or otherwise respond to the subpoena through and including June 6, 2008. Defendants' objections to the subpoena are attached hereto as Exhibit B.

calculated to lead to the discovery of admissible evidence, Defendants raise the privilege issue at this time so there can be no waiver argument in the future.[4]

From a procedural standpoint, Defendants respectfully request that the Court first rule on the permissible scope of discovery. If the Court agrees with Defendants and limits discovery to documents pertaining to the investigation into the identity of the authors of the Factoids, then there will be no need to address the privilege issue as those documents do not relate to that investigation, but instead concern the substance of the Factoids themselves and other legal strategies. Thus, it would be premature at this time to provide a privilege log of documents or fully brief the privilege issue as the primary issue before the Court relates to the scope of production.

Accordingly, Phoebe respectfully requests that this Court quash the subpoena or issue a protective order limiting discovery to information reasonably calculated to lead to the discovery of admissible evidence.

## BRIEF FACTUAL BACKGROUND

In September 2003, Phoebe Putney Memorial Hospital received an anonymous facsimile entitled "Phoebe Factoids" ("the Factoids") on one of its hospital fax machines (A true and correct copy of the Factoids are attached hereto as Exhibit C). In the ensuing months, a total of eighteen (18) Factoids were

---

[4] Plaintiff's subpoena also requests documents that involve numerous other entities and individuals that may have attorney client privileges and work product protections to assert.

anonymously transmitted to Phoebe as well as to numerous other individuals and businesses throughout the Albany, Georgia area.

Faced for the first time with such a vicious and anonymous assault, Phoebe endeavored to identify the authors of the anonymous Factoids that were being widely disseminated in the Albany, Georgia medical and business community. In so doing, Phoebe (or its counsel) hired private investigators, and eventually, the Dougherty County District Attorney became involved in the investigation.

Given the nature of the Factoids, Phoebe also engaged numerous attorneys and consultants to assist it in developing a strategy to defend itself against the Factoids, and against what appeared at the time to be a targeted campaign designed to harass, annoy, and embarrass Phoebe and its officers and board members.

Indeed, given the manner in which the very first Factoid was distributed, its tone and its subject matter, Phoebe realized that in September of 2003, some form of legal action, including litigation, would likely ensue. As a result, Phoebe directed its counsel and consultants to focus their efforts on issues related to the Factoids, and their impact on Phoebe's legal decision making process.

Finally, in Fall 2004, Plaintiff, an Albany physician, and one of his co-workers, Charles Rehberg, admitted publicly to having authored and distributed the Factoids as part of a corporate campaign being waged against Phoebe.

### *The Allegations in the Complaint*

On February 5, 2007, Plaintiff filed a Complaint in the United States District Court, Middle District of Georgia seeking damages allegedly sustained by Plaintiff as a result of Defendants' investigation into the identity of the authors of the Factoids.[5]   The Complaint does not address the actual substance of the Factoids (*i.e.* their falsity or truthfulness).   Rather, the gravamen of Plaintiff's Complaint is that Defendant's conduct in investigating the identity of the Factoids was improper and in violation of the law.   Thus, issues related to the actual substance of the Factoids are not relevant to Plaintiff's claims nor reasonably calculated to lead to the discovery of admissible evidence.

Indeed, one need only look at the alleged violations in Plaintiff's Complaint to determine that the issues in the case are quite narrow and focused, unlike Plaintiff's subpoena.   Specifically, Plaintiff asserts that Defendants' investigation into the identity of the authors and their involvement with the Dougherty County District Attorney's Office was improper and constitutes: (1) a violation of his civil rights under 42 U.S.C. § 1983; (2) improper disclosure of telephone communications; (3) malicious prosecution; (4) identity fraud; (5) a violation of

---

[5]   Plaintiff filed an Amended Verified Complaint on March 23, 2007 ("the Complaint").  A true and correct copy of the Amended Verified Complaint is attached hereto as Exhibit D.

the Georgia Computer Systems Protection Act; (6) a violation of Georgia's RICO Act; and (7) a violation of free speech under the Georgia constitution.

A cursory review of Plaintiff's Complaint shows that the allegations stem **solely** from Phoebe's efforts to identify the author, or authors, of the anonymous facsimiles. Thus, the veracity of the Factoids is not at issue, nor is Defendants reaction to them, other then as it relates to identifying the authors.[6] Accordingly, the only issues pertinent to Plaintiff's claims in this case, and which are reasonably calculated to lead to the discovery of admissible evidence, are those regarding the investigation into the identity of the authors of the Factoids, Defendants' involvement with the Dougherty County District Attorney, and Plaintiff's motives and efforts to embark on an anti-Phoebe campaign which included, among other things, distributing the Factoids. Plaintiff's subpoena, however, seeks discovery of significantly more information that goes well beyond the issues in this case, and therefore Defendants' motion should be granted.

## ARGUMENT AND CITATION OF AUTHORITY

### I. This Court has Jurisdiction to Quash Plaintiff's Rule 45 Subpoena.

This Court has jurisdiction to rule on this motion as the subpoena was issued out of this Court. Fed. R. Civ. P. 45(c)(3)(A) (providing that the "issuing court"

---

[6] For example, one of the Factoids speaks to the compensation of Joel Wernick, the CEO of Phoebe. If Phoebe conducted research, analysis, or studies into his compensation or that of other hospital CEO's, such documentation would not be discoverable in this case as it does not relate to Defendants' efforts to identify the authors of the Factoids.

may quash or modify the subpoena upon a timely motion). *See also, Wright & Miller*, 9A Fed. Prac. & Proc. Civ.2d § 2463.1 ("The 1991 amendments to Rule 45(c) now make it clear that motions to quash, modify, or condition the subpoena are to be made in the district court of the district from which the subpoena issued.").

Defendants' motion is proper as they seek to protect a privilege and right with respect to the materials subpoenaed.   A party has standing to quash a subpoena when the party is "seeking to protect a personal privilege or right." *Nova Products, Inc. v. Kisma Video, Inc.* 220 F.R.D. 238, 241 (S.D.N.Y. 2004); *See Also, Stevenson v. Stanley Bostich, Inc.*, 201 F.R.D. 551, 555, n. 3 (N.D. Ga. 2001) ("It appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when she alleged a 'personal right; or privilege with respect to the materials subpoenaed.'"); *Melder v. State Farm Mut. Auto. Insur. Co.*, 2008 WL 1899569 (April 25, 2008) (holding that party defendant had standing to quash subpoena issued to non-party where subpoena sought defendant's privileged communications).

In this case, Hayslett was engaged by Phoebe and/or its counsel to provide confidential consultations on a variety of matters, and to assist in the overall legal strategy related to certain legal issues, including Phoebe's reaction to and defense against the anonymous Factoid campaign at the heart of the underlying litigation. As some of the subpoenaed materials contain privileged and/or confidential

- 8 -

information unrelated to the issues in this case, Defendants have an absolute right and standing to move to quash the subject subpoena.

## II.    The Subpoena Exceeds the Bounds of Permissible Discovery.

Discovery is properly confined to the claims and defenses asserted in the pleadings. Rule 26(b)(1) defines the scope of discovery and provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's *claim or defense*….For *good cause*, the court may order discovery of any matter relevant to the *subject matter* involved in the action. Fed. R. Civ. P. 26(b)(1) (emphasis added). Parties are not entitled "to discovery to develop new claims or defenses that are not already identified in the pleadings," and courts have the "authority to confine discovery to the claims and defenses asserted in the pleadings." *Dellacassa, LLC v. John Moriarty & Assoc. of Fla., Inc.* No. 07-21659-CIV., 2007 WL 4117261, at *1 (S.D. Fla. Nov. 16, 2007) (quoting *Advisory Comm. Notes*, 2000 Amendment). The Court should determine the scope of discovery "according to the reasonable needs of the action, …depending on the circumstances of the case, and the nature of the claims and defenses, and the scope of discovery requested." *Id.*

In this case, Plaintiff's third-party subpoena commands the production of fourteen overly broad categories of documents.  Each and every request is objectionable on its face as each calls for production of virtually every piece of paper that has anything to do with Defendants or other named individuals and

entities.  Indeed, Plaintiff made no effort to narrow the scope of any of his requests either by time or subject matter.  Instead, Plaintiff takes the position that every document that has any reference to any of the Defendants, the parties to the case, or other entities, individuals or litigation identified in the requests is discoverable and must be produced.  Plaintiff's position is ludicrous.

Plaintiff is asking this Court to allow him to conduct a fishing expedition into the business affairs of Phoebe.  Discovery, though liberal, is not intended to allow such behavior.  Indeed, discovery "is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *Martinez v. Cornell Corrections of Texas*, 229 F.R.D. 215, 218 (D. New Mexico 2005); *See also Bitler Investment Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1:04-CV-477, 2007 WL 1164950, at *6 (N.D. Ind. April 18, 2007) ("discovery has ultimate and necessary boundaries. The relevancy requirement should not be misapplied so as to allow fishing expeditions in discovery.") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

A.    ***Request Nos. 1, 2, 4, 5, 6, 9, 11, 12, 13, 14 are overly broad, exceed the scope of permissible discovery, and demonstrate that Plaintiff is engaging in a fishing expedition into the business of Defendants.***

These requests call for production of every single document that refers, reflects, relates, evidences, or which concern in any way Defendants or the other

entities listed in the specific request.  There is no time or subject matter restriction

on any of these requests. For example, Request No. 1 asks for:

> All documents that refer, reflect, or relate to Phoebe Putney Memorial
> Hospital, Inc., Phoebe Putney Health Systems, Inc., Grove Pointe Indemnity,
> Joel Wernick, Langley and Lee LLC, Carl Richard Langley, Larry J.
> McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics,
> Inc., Stephen B. Chenoweth, John Bagnato, Charles Rehberg and Jim
> Bowman. [7]

Similarly, Request No.  9 asks for:

> All documents evidencing, reflecting, referring or relating to any
> conversation or communication or correspondence concerning or related to
> the Criminal Prosecution, this litigation, Phoebe Putney Memorial Hospital,
> Inic., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee
> LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC,
> Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, Barrett
> Law Office, Brown & Scoccimaro, Scruggs Law Firm, Bobby Lee Cook,
> Kindling Group, ABC, Peter Halmos, Taylor & Ives, and any investigator
> and/or consultant and/or any broadcast or print media entity. [8]

These  and  the  other  requests  are  clearly  objectionable  on  their  face.   Indeed,

Plaintiff  is  unable  to  articulate  any  rational  explanation  as  to  why  he  should  be

---

[7]    Plaintiff acknowledged his requests were overbroad in time and agreed to
partially narrow the scope to documents generated subsequent to September 2003,
except as to documents related to the amount of compensation paid to Hayslett.
While Defendants agree that the time limitation is appropriate given the facts of the
case,  documents  pertaining  to  Hayslett's  compensation  for  his  services  are  not
reasonably calculated to lead to the discovery of admissible evidence.

[8]    For the Court's convenience, Defendants have attached as Exhibit E a brief
description of the individuals/entities at issue in the subpoena.

entitled to every document that relates in any way to any of the above individuals/entities, irrespective of the subject matter of the document.[9]

Although the issues in this case relate to the investigation into the identity of the authors (and Plaintiff's motives and participation in an anti-Phoebe campaign), as worded, the request seeks all production of documents that are not reasonably calculated to lead to the discovery of admissible evidence, including, for example, documents pertaining to:

a)    the business affairs of Phoebe;

b)    general public relations efforts of Phoebe;

c)    Phoebe's research into other hospitals;

d)    inpatient and outpatient utilization studies;

e)    Phoebe's receipt of the Foster McGaw award;

f)    Phoebe's role regarding a cancer coalition;

g)    Phoebe's research into various issues related to the health care industry; and

h)    Phoebe's research into the subject matter of the Factoids (as opposed to the investigation into the identity of their authors).

---

[9]    Tellingly, when Plaintiff served his document requests on Defendants in this case, he requested documentation regarding the "Subject Incident" which he defined to include the investigation into the authors of the Factoids and persons retained to investigate the Factoids. Plaintiff's own document requests demonstrate that these subpoenas are overreaching and far outside the scope of permissible discovery. (A true and correct copy of Plaintiff's document requests and interrogatories are attached hereto as Exhibit F).

Clearly, the requests enumerated in Plaintiff's subpoena seek materials far beyond the subject matter of the claims in the underlying lawsuit, i.e. Defendants' investigation of the authors of the anonymous Factoids. Indeed, Plaintiff's subpoena is a virtual fishing expedition, unlimited to matters relevant to the actual litigation pending in the Middle District of Georgia.

Plaintiff cannot circumvent the restricted bounds of discovery by issuance of a Rule 45 subpoena. "It is well-established that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *Chamberlain v. Farmington Sav. Bank*, Civil No. 3:06CV01437 (CFD), 2007 WL 2786421 at *1 (D. Conn. Sept. 25, 2007) (quashing subpoenas upon motion by party in part because subpoenas exceeded permissible scope of discovery). The Advisory Committee Notes to the 1970 Amendment to Rule 45 make this clear and provide that "[t]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); *see also, Laethem Equip. Co. v. Deere & Co.*, No. 05-CV-10113-BC, 2007 WL 2873981, at *4 (E.D. Mich. Sept. 24, 2007) ("The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)."). Thus, just as certain materials are beyond the bounds of discovery between the parties pursuant to Rules 26 and 34, the documents requested in the subpoena should not be obtainable through a non-party subpoena.

In addition to requesting materials far beyond the scope of admissible evidence in the underlying litigation, Plaintiff's subpoena is facially overbroad as it requests "all" documents in each enumerated category without any further limitations. Despite the fact that the relevant time period in the underlying matter commences in September, 2003, Plaintiff's requests include no temporal limitation. Thus, by requesting "all" records without limitation, the subpoenas are over-broad on their face. *See generally, Franzen v. Massena Mem'l Hosp.*, 189 F.R.D. 220, 222 (N.D.N.Y. 1999) (finding request overbroad when it sought "any and all" documents and provided no meaningful limitations and was not limited to the time period at issue in the case); *see also*, *Viking Yacht Co. v. Composite One LLC,* No. 3:07-MC-001, 2007 WL 869623, at *3 (E.D. Tenn. March 21, 2007); *Morrow v. Air Ride Tech, Inc.* No. IP-05-113, 2006 WL 559288, at *2 (S.D. Inc. Mar. 6, 2006).

   **B.    *Request Nos. 3 and 10 are overly broad and exceed the scope of permissible discovery as all consulting agreements and contracts are not reasonably calculated to lead to the discovery of admissible evidence.***

Request Nos. 3 and 10 seek production of all documents that evidence, reflect, refer, or relate to any type of agreement or contract that concerns or relates to Phoebe and other named individuals/entities and litigation identified in the request.   Plaintiff offers no explanation as to how all such documents are reasonably calculated to lead to the discovery of admissible evidence.   Indeed, if,

for example, a document refers or relates to an "agreement" whereby Hayslett agreed to research or communicate with a health care professional organization related to forming a cancer coalition, how is that discoverable in this case?   If a document references an "agreement" whereby Hayslett agreed to provide general consulting services, how is that discoverable in this case?

For the reasons set forth above, these requests are overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

### C. *Documents relating to other litigation, such as the "Not for Profit Litigation" are not discoverable.*

Several of the requests seek production of documents that relate to other litigation which is not at issue in this lawsuit.  In particular, Plaintiffs seek every piece of paper that relates to the Not for Profit Litigation or individuals/entities involved in those cases.[10]  The Not for Profit Litigation as defined in the subpoena, refers to a lawsuit filed by Richard Scruggs of the Scruggs law firm against Phoebe.  The lawsuit was one of a spate of lawsuits Scruggs filed across the country against non-profit hospitals on behalf of uninsured patients alleging improprieties related to the billing and collection practices against uninsured patients.  Most, if not all, of those cases were dismissed by the various courts, or the complaints were dismissed before the court had an opportunity to dismiss them.

---

[10]    See Request Nos. 8, 9, 10, 11, 13, 14.

The substance of the Not for Profit Litigation has nothing to do with the instant case.[11]   This case arises out of allegations of impropriety related to the investigation into the identity of the authors of the Factoids.    The substantive issues in the Not for Profit Litigation bear no rationale relationship to the facts in this case.   That Plaintiff is seeking such broad discovery truly demonstrates that he is conducting a fishing expedition with seemingly improper motives.

### III.    The Subpoena Seeks Materials Protected from Disclosure by the Attorney Client Privilege and the Work Product Doctrine.

As set forth above, because of the unreasonable breadth of the requests, some of the documents requested are protected from discovery by the attorney-client privilege and/or the work product doctrine.   The privileged documents, however, do not pertain to the identity or investigation into the Factoid authors, and therefore are not reasonably calculated to lead to the discovery of admissible evidence.   Instead, they relate to other irrelevant and non-discoverable issues such as the substantive contents of the Factoids, the Not for Profit Litigation, and potential antitrust issues.   Since the privileged documents exceed the scope of permissible discovery, Defendants simply raise the privilege issue at this time so there can be no waiver argument in the future.

From a procedural standpoint, and to avoid unnecessary resources, trouble, and expense, Defendants request that the Court first rule on the permissible scope

---

[11]    Plaintiff's involvement in such litigation is discoverable to the extent it shows his motives and participation in an overall anti-Phoebe campaign.

of discovery.  If the Court agrees with Defendants and finds that discovery should be limited to the investigation into the identity of the authors of the Factoids, then there is no need to address the privilege issue as those documents would not be discoverable.  Thus, it would be premature at this time to provide a privilege log of documents as the primary issue relates to the scope of production.

It should be noted, however, that Hayslett's communications with Defendants, including Phoebe, its employees and attorneys are protected by the attorney client privilege and/or the work product doctrine. Specifically, Hayslett was utilized as an agent of Phoebe initially to deal with the crisis caused by the anonymous Factoid campaign – a campaign that forced Phoebe to anticipate litigation from the outset. Later, Hayslett was retained by Phoebe counsel and party defendant Carl Richard Langley directly to assist in the formation and giving of legal advice to Phoebe. As such, communications between Hayslett and Phoebe as well as between Hayslett and Phoebe's counsel (including but not limited to Langley) are privileged and protected from disclosure. *See, Every Penny Counts, Inc. v. American Exp. Co.*, No. 8:07-cv-1255-T-26 MAP, 2008 WL 2074407 (M.D. Fla. May 15, 2008) (extending work product protection to documents prepared in anticipation of litigation by client and consultant, regardless of attorney input and extending attorney client privilege to consultants who act as *de facto* employees of client). *See also, Stafford Trading, Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252 (N.D. Ill. Feb. 22, 2007) at *7. (extending privilege to consultants who

communicated with client and client's attorneys for the purpose of obtaining or providing legal advice); *In re Copper Market Antitrust Litig.,* 200 F.R.D. 213, 217 (S.D.N.Y.2001) (extending attorney client privilege to public relations consultants and holding "confidential communications made for the purpose of obtaining legal advice between a client's representatives and the client's attorney, between representatives of a client, or between attorneys for a client should be protected from disclosure under the attorney-client privilege"). Hayslett was utilized by Phoebe and its counsel for the direct development and use of legal advice. Accordingly, his communications are privileged and should not be produced pursuant to Plaintiff's subpoena.

Again, the issue of privilege will be more fully briefed after the Court issues a ruling as to the scope of permissible discovery.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court quash the subpoena or enter a protective order as to the documents sought therein.

This 6th day of June, 2008.

*/s/ L. Lin Wood*
L. Lin Wood
Georgia Bar No.:  774588
Marlo Orlin Leach
Georgia Bar No.:  442216
Katherine Ventulett Hernacki
Georgia Bar No.:  727027

- 18 -

Paige Arden Stanley
Georgia Bar No.: 675135
Margaret M. Kane
Georgia Bar No.: 330531

**POWELL GOLDSTEIN LLP**
One Atlantic Center
Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:  (404) 572-6600
Facsimile:   (404) 572-6999

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| JOHN BAGNATO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| PHOEBE PUTNEY HEALTH SYSTEM, | ) | 1:07-CV-00030-WLS* |
| INC., PHOEBE PUTNEY MEMORIAL | ) | |
| HOSPITAL, INC., JOEL WERNICK, | ) | * Action is pending in the |
| LANGLEY AND LEE, LLC, | ) | United States District |
| CARL RICHARD LANGLEY, | ) | Court for the Middle |
| LARRY J. MCCORMICK AND | ) | District of Georgia |
| ASSOCIATES, LLC, | ) | |
| LARRY J. MCCORMICK, | ) | Miscellaneous Action No. |
| WORK DYNAMICS, INC., | ) | |
| STEPHEN B. CHENOWETH, | ) | _____ |
| JOHNDOES NO. I THROUGH V, | ) | |
| ABC CORPORATION, and | ) | |
| XYZ CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of June, 2008, the foregoing pleading was

served on the following attorneys of record by First Class Mail:

Timothy J. Buckley, III          Ralph W. Powell, Jr.
Buckley Brown PC                 Alex J. Kaplan
Suite 1010                       McCall Williams Wilmot & Powell LLC
2970 Clairmont Road, NE          Post Office Box 71747
Atlanta, GA  30329               Albany, GA  31708

Bryan A. Vroon                      Victor L. Moldovan
Vroon & Crongeyer LLP              Phears and Moldovan
Suite 1088                          Suite 2050
1718 Peachtree Street              The Lenox Building
Atlanta, GA  30309                 3339 Peachtree Road
                                    Atlanta, GA  30326


Alfred N. Corriere
Vansant & Corriere, LLC
PO Box 347
Albany, GA  31702-0347


and served by First Class Mail upon counsel for Charles Hayslett as follows:

      Mark S Marani, Esq.
      Cohen Pollock Merlin & Small, P.C.
      Suite 1600
      3500 Riverwood Parkway
      Atlanta, GA  30339

                  */s/ Katherine Ventulett Hernacki*
                  Katherine Ventulett Hernacki
                  Georgia Bar No.:  727027


**POWELL GOLDSTEIN LLP**
One Atlantic Center
Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:  (404) 572-6600
Facsimile:  (404) 572-6999


                  Attorney for Defendants


5118441

# EXHIBIT

# A

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Northern                    DISTRICT OF                    Georgia

John Bagnato

V.                          **SUBPOENA IN A CIVIL CASE**

Phoebe Putney Health System, Inc., et al

Case Number:[1] 1:07-CV-00030-WLS
United States District Court
Middle District of Georgia
Albany Division

TO:  Charles "Charlie" Hayslett
     50 Glenlake Parkway
     Suite 430
     Atlanta, Georgia 30328

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Exhibit "A"

| PLACE   50 Glenlake Parkway, Suite 430  Atlanta, Georgia 30328 | DATE AND TIME  4/11/2008 10:28 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR XXXXXXXXXXX | DATE  3/11/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Ralph W. Powell, Jr., Attorney for Plaintiff, State Bar #: 586370, McCall Williams Wilmot & Powell, LLC, 1101 Valley Rd (Post Office Box 71747), Albany, Georgia 31707 (31708-1747), Phone: 229-888-2600, Fax:  229-888-3330

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE *1:35PM* | PLACE *50 Glenlake Pkwy Suite 430 Atlanta, GA 30328* |
|---|---|---|
| SERVED | *March 17, 2008* | |

MANNER OF SERVICE *Corporate*

SERVED ON (PRINT NAME)

*Jody Hayslett - Authorized Agent*

SERVED BY (PRINT NAME)      TITLE

*Don Edwards*      *Process Server*

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on     *3-19*
           DATE

SIGNATURE OF SERVER

ATLANTA LEGAL SERVICES, INC.
3070 Presidential Drive
Suite 148
Atlanta, Georgia 30340

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT "A"

## INSTRUCTIONS AND DEFINITIONS

1. "You" and "Your" shall refer to Charles "Charlie" Hayslett, and affiliates, agents, employees and all persons or entities acting on behalf of Charles "Charlie" Hayslett.

2. Compliance with this subpoena may be made by presenting copies of the documents as requested herein, or specific objections thereto, to Ralph W. Powell, Jr. at Post Office Box 71747, Albany, Georgia 31708-1747 *within 30 days of the date of service of this subpoena*. If documents or objections responsive to this subpoena are not presented within 30 days of the date of service of this subpoena, inspection as specified in the subpoena will be made.

3. As used within the Requests and the Instruction and Definitions, the conjunction "and" is defined to include the disjunctive "or" and, conversely, "or" is defined to include "and".

4. "Possession" shall include items that are under your custody or control and that you constructively or actually possess or possessed.

5. If you have possession of the originals of the documents requested then the originals and all non-identical copies shall be produced; if you do not have possession, custody or control of the originals of the documents requested then one identical copy of each original and any and all non-identical copies of each original shall be produced.

6. If any document requested herein has been lost, discarded, transferred or destroyed it shall be identified as completely as possible including without limitation the following information: date of disposal, manner of disposal, reason of disposal, person authorizing disposal and person conducting the disposal.

7. As used herein the word "communication" includes any verbal or oral utterance, made, heard or overheard whether in person or by telephone or otherwise as well as every document and every other mode of potentially conveying the meaning.

8. As used herein the term "document" will include the broad definition of "documents or electronically stored information" contained in FRCP 34 as amended in 2006 including the 2006 Notes of the Advisory Committee. Specifically, "document" shall include, but not be limited to, writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations stored in any electronic storage or other type of medium from which information can be obtained including, but not limited to, magnetic or optical storage media saved as an "active" file, any electronic files saved as a backup, any "deleted" but recoverable electronic files in any electronic file fragments (files that have been deleted and partially overwritten with new data). "Document" shall include any and all drafts of documents however and by whoever prepared, produced, reproduced, disseminated, or made in any form, now or formerly in your actual or constructive possession or control, regardless of the medium on which it is produced, reproduced or stored. Any such document bearing thereon any marks such as, but not limited to, initials, stamped indicia, comments or notations, of any character and not a part of the original text or photographic reproduction thereof, is to be considered a separate document.

9.   The phrase "relate to" shall mean consisting of, referring to, reflecting, pertaining to, or any way logically or actually connected with the matter discussed. A document which "relates to" a given subject is any document identifying, showing, referring to, dealing with, evidencing, commenting upon, having as a subject, describing, summarizing, analyzing, explaining, detailing, outlining, defining, interpreting, or pertaining to that subject, including, without limitation, documents referring to the presentation of other documents.

10.  Electronically Stored information is to be produced in Word or PDF form.

11.  If you assert a privilege and refuse to produce a document to any request or portion of a request, provide the following:

    1.   The privilege asserted;

    2.   A description of the document;

    3.   The date the document was created;

    4.   Identify by name, address, e-mail address the author of the document;

    5.   The names of the persons or entities to whom the document was disseminated or published;

    6.   The date the information was disseminated or published; and,

    7.   The manner in which the document was disseminated or published.

12.  As used herein, the words "the Criminal Prosecution" shall refer to the criminal prosecution of John Bagnato, Charles Rehberg, and Jim Bowman, both individually and collectively, in the Superior Court of Dougherty County, Georgia, pursuant to Bill of Indictment numbers 05-R-1253; 06-R-121; and/or 06-R-183.

13.  As used herein, the words "the NFP Litigation" shall refer to litigation prosecuted Phoebe Putney Memorial Hospital, Inc. and/or Phoebe Putney Health Systems, Inc. in whole or in part by attorney Richard Scruggs and the Scruggs Law Firm.

## REQUESTS

1.   All documents that refer, reflect or relate to Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Grove Pointe Indemnity, Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, John Bagnato, Charles Rehberg and Jim Bowman.

2.   All documents evidencing, reflecting, referring or relating to any conversation, communication or correspondence between you and Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Grove Pointe Indemnity, Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, John Bagnato, Charles Rehberg and Jim Bowman.

3.   All documents evidencing, reflecting, referring or relating to any engagement or consulting agreement between you and Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc. and Stephen B. Chenoweth.

4.   All documents you received from or provided to Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc. and Stephen B. Chenoweth.

5.   All documents that refer, reflect or relate to Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Grove Pointe Indemnity, Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, John Bagnato, Charles Rehberg and Jim Bowman.

6.   All documents that refer, reflect or relate to Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., including, but not limited to,

   a)   All documents that refer, reflect or relate either directly or indirectly to any investigation relating to Phoebe Putney Memorial Hospital, Inc. and/or Phoebe Putney Health Systems, Inc.; and

   b)   All documents that refer, reflect or relate either directly or indirectly to any public relations plan or strategy relating to Phoebe Putney Memorial Hospital, Inc. and Phoebe Putney Health Systems, Inc.

7.   All documents that refer, reflect or relate to the Criminal Prosecution.

8.   All documents that refer, reflect or relate to both the NFP Litigation and any of the following:  Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc. and Stephen B. Chenoweth.

9.   All documents evidencing, reflecting, referring or relating to any conversation, communication or correspondence concerning or related to the Criminal Prosecution, this litigation, Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, Barrett Law Office, Brown & Scoccimaro, Scruggs Law Firm, Bobby Lee Cook, Kindling Group, ABC, Peter Halmos, Taylor & Ives, and any investigator and/or consultant and/or any broadcast or print media entity.

10. All documents evidencing, reflecting, referring or relating to any type of contract or agreement concerning or related to to the Criminal Prosecution, this litigation, Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, Barrett Law Office, Brown & Scoccimaro, Scruggs Law Firm, Bobby Lee Cook, Kindling Group, ABC, Peter Halmos, Taylor & Ives, and any investigator and/or consultant and/or any broadcast or print media entity.

11. All invoices, statements, bills, receipts, memoranda or other documents in your possession concerning or related to the Criminal Prosecution, this litigation, Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, Barrett Law Office, Brown & Scoccimaro, Scruggs Law Firm, Bobby Lee Cook, Kindling Group, ABC, Peter Halmos, Taylor & Ives, and any investigator and/or consultant and/or any broadcast or print media entity.

12. Any file in your possession concerning or related to the Criminal Prosecution, this litigation, Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, Barrett Law Office, Brown & Scoccimaro, Scruggs Law Firm, Bobby Lee Cook, Kindling Group, ABC, Peter Halmos, Taylor & Ives, and any investigator and/or consultant and/or any broadcast or print media entity.

13. All written correspondence or communications in your possession concerning or related to the Criminal Prosecution, this litigation, Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, Barrett Law Office, Brown & Scoccimaro, Scruggs Law Firm, Bobby Lee Cook, Kindling Group, ABC, Peter Halmos, Taylor & Ives, and any investigator and/or consultant and/or any broadcast or print media entity.

14. All electronic communications or e-mails in your possession concerning or related to the Criminal Prosecution, this litigation, Phoebe Putney Memorial Hospital, Inc., Phoebe Putney Health Systems, Inc., Joel Wernick, Langley and Lee, LLC, Carl Richard Langley, Larry J. McCormick and Associates, LLC, Larry J. McCormick, Work Dynamics, Inc., Stephen B. Chenoweth, Barrett Law Office, Brown & Scoccimaro, Scruggs Law Firm, Bobby Lee Cook, Kindling Group, ABC, Peter Halmos, Taylor & Ives, and any investigator and/or consultant and/or any broadcast or print media entity.

# EXHIBIT

# B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN BAGNATO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION FILE NO.: |
| PHOEBE PUTNEY HEALTH SYSTEM, | )  1:07-CV-00030-WLS |
| INC., PHOEBE PUTNEY MEMORIAL | ) |
| HOSPITAL, INC., JOEL WERNICK, | ) |
| LANGLEY AND LEE, LLC, | ) |
| CARL RICHARD LANGLEY, | ) |
| LARRY J. MCCORMICK AND | ) |
| ASSOCIATES, LLC, | ) |
| LARRY J. MCCORMICK, | ) |
| WORK DYNAMICS, INC., | ) |
| STEPHEN B. CHENOWETH, | ) |
| JOHNDOES NO. I THROUGH V, | ) |
| ABC CORPORATION, and | ) |
| XYZ CORPORATION, | ) |
| | ) |
| Defendants. | ) |

---

**OBJECTIONS TO THIRD-PARTY SUBPOENA BY DEFENDANTS
PHOEBE PUTNEY HEALTH SYSTEM, INC., PHOEBE PUTNEY
MEMORIAL HOSPITAL, INC., JOEL WERNICK,
LANGLEY AND LEE, LLC, AND CARL RICHARD LANGLEY**

---

NOW COME Defendants Phoebe Putney Health System, Inc., Phoebe

Putney Memorial Hospital, Inc., Joel Wernick, Langley & Lee, LLC, Carl Richard

Langley ("Defendants"),   and hereby file their objections to the Third-Party

subpoena served by Plaintiff on Charles "Charlie" Hayslett ("Hayslett"), who is not a party to this action.

Defendants object to each of the documents requests as follows:

1.

Defendants object to Request No. 1 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which has anything whatsoever to do with Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document.   Defendants further object to Request No. 1 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.  Subject to and without waiving the foregoing objections, non-objectionable documents which pertain to the investigation of the identity of the authors of the Factoids will be produced to the extent such documents exist.

2.

Defendants object to Request No. 2 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request as worded seeks production of every

piece of paper in Hayslett's possession which has anything whatsoever to do with Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document.   Defendants further object to Request No. 2 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.   Subject to and without waiving the foregoing objections, non-objectionable documents which pertain to the investigation of the identity of the authors of the Factoids will be produced to the extent such documents exist.

3.

Defendants object to Request No. 3 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which has anything whatsoever to do with any kind of engagement or consulting agreement between Hayslett and Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document.    Defendants further object to Request No. 3 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.    Subject to and without waiving the foregoing objections, non-

objectionable documents which pertain to the investigation of the identity of the authors of the Factoids will be produced to the extent such documents exist.

4.

Defendants object to Request No. 4 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which was sent to or from Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document.   Defendants further object to Request No. 4 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.   Subject to and without waiving the foregoing objections, non-objectionable documents which pertain to the investigation of the identity of the authors of the Factoids will be produced to the extent such document exists.

5.

Request No. 5 is the exact same request as Request No. 1.  Accordingly, Defendants object to Request No. 5 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which has anything whatsoever to do with

Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document.   Defendants further object to Request No. 5 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.   Subject to and without waiving the foregoing objections, non-objectionable documents which pertain to the investigation of the identity of the authors of the Factoids will be produced to the extent such documents exist.

6.

Defendants object to Request No. 6 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which has anything whatsoever to do with Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document.   Defendants further object to Request No. 6 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.

7.

Defendants object to Request No. 7. on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request as worded seeks production of documents related to individuals who are not parties to this lawsuit.  Defendants further object to Request No. 7 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.  Subject to and without waiving the foregoing objections, non-objectionable documents which pertain to the criminal prosecutions pursuant to the Bill of Indictment numbers referenced in the request will be produced to the extent such documents exist.

8.

Defendants object to Request No. 8 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which has anything whatsoever to do with the Not for Profit Litigation filed against Defendants Phoebe Putney Health Systems, Inc. and/or Phoebe Putney Memorial Hospital.  The Not for Profit Litigation was a separate lawsuit filed by different counsel regarding issues that have nothing to do with the allegations set forth in the instant Complaint.

Defendants further object to Request No. 8 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.

9.

Defendants object to Request No. 9 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which has anything whatsoever to do with Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document. Defendants further object to Request No. 9 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine. Subject to and without waiving the foregoing objections, non-objectionable documents which pertain to the investigation of the identity of the authors of the Factoids and the criminal prosecutions pursuant to the Bill of Indictment numbers referenced in the request will be produced to the extent such documents exist.

10.

Defendants object to Request No. 10 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of

admissible evidence. Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which has anything whatsoever to do with any type of contract or agreement related to Defendants, irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document. Defendants further object to Request No. 10 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.

11.

Defendants object to Request No. 11 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which has anything whatsoever to do with Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document. Defendants further object to Request No. 11 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine. Subject to and without waiving the foregoing objections, non-objectionable documents which pertain to the investigation of the identity of the authors of the Factoids and the criminal prosecutions pursuant to the

Bill of Indictment numbers referenced in the request will be produced to the extent such documents exist.

12.

Defendants object to Request No. 12 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request as worded seeks production of every file in Hayslett's possession which has anything whatsoever to do with Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document.   Defendants further object to Request No. 12 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine.   Subject to and without waiving the foregoing objections, non-objectionable documents which pertain to the investigation of the identity of the authors of the Factoids and the criminal prosecutions pursuant to the Bill of Indictment numbers referenced in the request will be produced to the extent such documents exist.

13.

Defendants object to Request No. 13 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request as worded seeks production of every

piece of paper in Hayslett's possession which has anything whatsoever to do with Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document. Defendants further object to Request No. 13 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine. Subject to and without waiving the foregoing objections, non-objectionable documents which pertain to the investigation of the identity of the authors of the Factoids and the criminal prosecutions pursuant to the Bill of Indictment numbers referenced in the request will be produced to the extent such documents exist.

14.

Defendants object to Request No. 14 on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request as worded seeks production of every piece of paper in Hayslett's possession which has anything whatsoever to do with Defendants irrespective of whether it is in any way related to this lawsuit and irrespective of the date of the document. Defendants further object to Request No. 14 on the grounds that it seeks documents that are confidential/proprietary and documents which are protected from disclosure by the attorney-client privilege/work-product doctrine. Subject to and without waiving the foregoing

objections, non-objectionable documents which pertain to the investigation of the

identity of the authors of the Factoids and the criminal prosecutions pursuant to the

Bill of Indictment numbers referenced in the request will be produced to the extent

such documents exist.

This 6th day of June, 2008.

                                        /s/ L. Lin Wood
                                        L. Lin Wood
                                        Georgia Bar No.:  774588
                                        Marlo Orlin Leach
                                        Georgia Bar No.:  442216
                                        Katherine Ventulett Hernacki
                                        Georgia Bar No.: 727027
                                        Paige Arden Stanley
                                        Georgia Bar No.:  675135
                                        Margaret M. Kane
                                        Georgia Bar No.:  330531

**POWELL GOLDSTEIN LLP**
One Atlantic Center
Fourteenth Floor
201 W. Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:   (404) 572-6600
Facsimile:    (404) 572-6999

                                        Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN BAGNATO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  CIVIL ACTION FILE NO.: |
| PHOEBE PUTNEY HEALTH SYSTEM, | )   1:07-CV-00030-WLS |
| INC., PHOEBE PUTNEY MEMORIAL | ) |
| HOSPITAL, INC., JOEL WERNICK, | ) |
| LANGLEY AND LEE, LLC, | ) |
| CARL RICHARD LANGLEY, | ) |
| LARRY J. MCCORMICK AND | ) |
| ASSOCIATES, LLC, | ) |
| LARRY J. MCCORMICK, | ) |
| WORK DYNAMICS, INC., | ) |
| STEPHEN B. CHENOWETH, | ) |
| JOHNDOES NO. I THROUGH V, | ) |
| ABC CORPORATION, and | ) |
| XYZ CORPORATION, | ) |
| | ) |
|     Defendants. | ) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of June, 2008, the foregoing pleading was served upon the following attorneys of record by First Class Mail:

Timothy J. Buckley, III            Ralph W. Powell, Jr.
Buckley Brown PC                 Alex J. Kaplan
Suite 1010                      McCall Phillips Williams & Powell LLC
2970 Clairmont Road, NE       Post Office Box 71747
Atlanta, GA  30329            Albany, GA  31708

Alfred N. Corriere, Esq.              Victor L. Moldovan, Esq.
Vansant & Corriere, LLC               Phears and Moldovan
Bank of America Building              Suite 2050
2nd Floor                             The Lenox Building
128 South Washington Street           3339 Peachtree Road
Albany, GA  31701                     Atlanta, GA 30326


Bryan A. Vroon, Esq.
Vroon & Crongeyer, LLP
Suite 1088
1718 Peachtree Street
Atlanta, GA 30309

and served by First Class Mail upon counsel for Charles Hayslett as follows:

Mark S. Marani, Esq.
Cohen Pollock Merlin & Small, P.C.
Suite 1600
3500 Riverwood Parkway
Atlanta, GA  30339


                                    */s/ Katherine Ventulett Hernacki*
                                    Katherine Ventulett Hernacki
                                    Georgia Bar No.:  727027

**POWELL GOLDSTEIN LLP**
One Atlantic Center
Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:  (404) 572-6600
Facsimile:   (404) 572-6999


                                    Attorney for Defendants

5112143

- 13 -

# EXHIBIT

# C

# Phoebe Phactoid



Q. Why are health care costs so high in Albany? A. It's quite simple – **Phoebe has a monopoly!**   Phoebe executives win; we lose.

Q. Joel Wernick says he has to have high rates and tax-free status so that the "haves" can pay for the "have-nots," is that correct? A. Not really – Phoebe's profits are greatly in excess of what is needed to operate.   But the real question is, is it Joel Wernick's place to correct social inequity?  Who gave him that authority?  Then there's the question of who are the have-nots?  The real "haves" are the Phoebe executives who are soaking the system by making mega-bucks off the backs of the "have-nots"- the sick and injured, and the nurses and employees in the trenches taking care of them.

Q. What can we do to correct this outrageous pillaging of our local economy? A. Call the Phoebe board members, call the County commissioners, and write letters to the newspapers.  Raise holy hell, it's the right thing to do!

Q. Who are the Wernick cronies on the board? A. W. Harry Willson, Chairman 435-4038; Lamar H. Moree, MD, Vice Chairman 888-6235; Tommy Chambless 435-9515; Laurence Crimmins, MD; W. Carl Gordon, Jr., MD 883-4562; Wilhelmina Hall 883-2029; Willie Hampton 432-7832; James A. Hotz, MD 432-1536; Tom Law 432-7496; Joel Wernick 431-2042.

*Phoebe Putney*
*World-Class Corruption, Hometown Deception*

# Phoebe Phactoid

**Q.** Why is Phoebe Putney Hospital being attacked? Does the hospital really deserve the scrutiny or is it just a personal grudge match against the hospital?

**A.** The hospital is not being attacked – the administration is. The hospital and its staff stand for all that is good and honorable at Phoebe. But the administration – Joel Wernick and his lieutenants – deserve scrutiny. They have twisted the institution into something that serves their needs, rather than the publics. Phoebe's net revenue has declined by $9 million from 2000 to 2002 yet during that same period, Phoebe's executives gave themselves raises of over $1,000,000. Then there's the dirty business of using Phoebe Health Ventures, Inc., a wholly owned for-profit subsidiary of Phoebe Health Systems, Inc. to fund political campaigns, such as $10,000 paid to The Georgia Alliance of Community Hospitals, Inc. political action committee in October 2002, a no-no according to IRS rules. How do we know? Because a tipster sent us documentation!

It's time to return the hospital to the hands of the people. What the hospital needs is a fresh administration with a revisiting of the mission –- service to the community.



Wernick

Toward the faithful you are faithful; to the honest you are honest; toward the sincere, sincere; but to the perverse you are devious. Humble people you save; haughty eyes you bring low.
Psalms 18: 26,27,28

Mail tips to PhoebeFactoids@Minister.com

# Phoebe Factoid Talking Points
## "We Report, You Decide"

There's been a lot of talk about who is behind Phoebe Factoids. Well here's the deal. The factoids are the conscience of the community. We all know that Phoebe administration is out of control. That's no secret. But what is so outrageous is that nobody seems to know who should call their hand and what should be done. The truth is Phoebe is a great institution that has been hijacked. By enacting a series of board changes and creating new corporations, the administration has artfully fashioned a fiefdom where only one man calls the shots. He is beholden to none. In the middle ages, such men were called feudal lords; the people that worked the land were called vassals. During the early days of the American South, such men were planters, owners of huge plantations and the people that worked the land were called slaves, and then after emancipation, sharecroppers. During the industrial revolution, such men became capitalists and the workers were left high and dry, totally at the mercy of the ruthless money-grubbing factory owners. If not for the struggles of union organizers and other reformers down through the ages, our country would look radically different. Today we face yet another challenge — healthcare reform — right in our own backyard.

How could this happen? The current Phoebe Putney Health Systems Board of Directors provides no real oversight, they merely rubber stamp the administration's requests. Run the list of board members and you notice that most of the board members have been there for years. Instead of term limits, theses folks are there for life, as long as they do the administration's bidding. If they buck, then it's good-by, adios, see ya. The doctors on the board are essentially owned by Phoebe administration and might not be able to cut it without Phoebe's support; certainly they cannot have the cushy lifestyle they enjoy now without Phoebe's generosity. Does Phoebe's support come with strings attached? You decide. Factoids has it from a reliable source, although unconfirmed, that one board member actually works for the CEO at his personal residence. Do you think she's going to ask questions, much less suggest changes if her income is on the line? You decide. Harry Willson has been on the board for years and years. If nothing else, it's simply time for him to go. The hijacking has occurred under his watch, probably with his approval. Should he step aside and let a fresh point of view come aboard, or is he afraid something will be uncovered that might further embarrass him, or maybe even get him indicted? You decide. Tommy Chambless depends on Phoebe for a tidy sum each year in legal fees and reimbursed political expenditures. Is he likely to buck the system and risk all the political connections and dough? You decide.

Is it really a good idea to shake up the hospital now? Phoebe Factoids says yes. If not now, then when? Oh sure. Phoebe administrators point to all the money they give away each year and cry foul at any criticism coming their way. They give away millions of dollars each year to numerous charities, $3,382,400 in grants and gifts in 2002, to be exact. But that's less than 1% of the $348,365,761 Phoebe took in. That's right; your local rural hospital took in over a third of a BILLION bucks, tax-free. Phoebe is sitting on over $217 million in untaxed cash and investments, excluding property. The Phoebe surplus was reported at $28,310,914 in 2002 and Phoebe Administrators paid themselves $3,390,995 in salaries and perks, just slightly more than the amount given to all charities. A 501(c)(3) tax exempt organization must operate for a "charitable" purpose to maintain its tax-exempt status. Phoebe pays absolutely no taxes - no property tax, no income tax, and no sales tax on what it purchases. Should Phoebe's expansion to high priced Dawson Road and Meredyth Drive properties get the same tax-free status as was given to the original Third Avenue campus? Is Phoebe as generous as they'd like you to

believe? Are they doing their share to make Albany a better place? Could Dougherty County use $4 million more in property taxes? You decide.

Phoebe says all its business dealings are on the up-and-up, they have nothing to hide. Well, if that's true, then why are they doing business with the likes of former State Senator Charles Walker? Check out the article that appeared on the front page of the April 14, 2002 Atlanta Journal-Constitution (***Senate Leader's economic web: Walker's business, Augusta dealings blur public-private line*** by Ken Foskett, staff writer), which mentions Albany specifically and outlines Walker's modus operandi. Do you think Phoebe Factoids is blowing smoke? Just ask Phoebe administration to explain why it did over $1 million dollars in business with Walker's company, Georgia Personnel Services, Inc. when these same unskilled employees could be hired directly for less. Ask for an explanation of why on Phoebe's 2001 tax form it states the services obtained through Walker's agency were for "nursing services," but Georgia Personnel Services had no nurses under contract. This is unskilled labor, which could, and should, have been obtained right here in Albany. According to Ken Foskett's explosive article on how Charles Walker does business, Phoebe may have been buying political favors. You decide.

Is it a good idea for a group of monopolistic hospitals to control a major insurance plan? If you have a problem with State Merit Insurance, check out the web site www.1stMN.com. Look at the board of directors of that organization – it's the "sleazy 16", Wernick and 15 other like minded hospital administrators. Is that a kosher business arrangement? You decide.

If that wasn't enough, then making illegal campaign contributions ought to cinch it up. How can a tax exempt organization make campaign contributions and not get caught? Very carefully. First you set-up a wholly owned "for-profit" subsidiary. Then you funnel thousands of tax free bucks from the non-profit to the for-profit, and write-off the funds as business expenses. But for the really big buckaroos, the kind of cash that would attract some unwanted attention, even for a for-profit subsidiary, say hundreds of thousands of dollars, what Phoebe does is shake-down anyone they've done business with - contractors, board members, lawyers, employees - and strongly urge them to make a contribution to Phoebe's candidate of choice, and then of course Phoebe administration reimburses the "donors" by overpaying for various services or paying bonuses to employees. In November 2001 Phoebe shook down everyone it did business with to the tune of over $197,000 for Governor Barnes. Phoebe Factoids has the list of contributors and can name names. Is this the way you want your "charitable" public hospital doing business? You decide.

So what should be done? Unfortunately, it's up to the folks. Americans are letting the French know how we feel about their duplicity, and the people of Albany have to let Phoebe Administration know how they feel as well. Write letters to the newspapers; write your congressmen, state senators, the Governor. Demand an investigation, complain to the health insurance companies, say no to Phoebe's high priced marketing consultant, use other healthcare options. When you use Phoebe, you're putting money in the administrator's already bulging pockets and adding to his war chest, money he uses to influence our state and local politicians. In America, the power resides in the people, but we must exercise that power for the powerful to respect us and in this case, we need to bring them to their knees. Margaret Mead once said "Never doubt that a small group of thoughtful, committed citizens can change the world. Indeed, it's the only thing that ever has." Together, we will succeed.

Mail tips to PhoebeFactoids@Minister.com

# Phoebe Phactoid

**Q**. Is there really corruption at Phoebe? **A**. Well, only if you call it sleazy to pay yourself $707,000 a year while you cancel the nurses cost of living raise. Or what about the Cayman Islands money and the $33,000 dollars in travel expenses to Margaritaville. Then there's Joel Wernick's interest-free mortgage, or maybe the lavish trips, the illegal political contributions, split-life insurance payments to the top executives … it's Enron, WorldCom, Global Crossing, … hell yes, there's corporate corruption going on right under our noses. Let's demand an end to the thievery and rape of our community! Remove Joel Wernick!



# $800,000 a year corporate crook?





*Phoebe Putney*
*World-Class Corruption, Hometown Deception*

# Phoebe Phactoids



In an editorial January 7, <u>Albany Herald</u> Editor Kay Read acknowledged a serious problem facing our State – the Medicaid program is $173 Million short of funds, and immediate action is required. Ms. Read's observations are correct, but unfortunately she fails to offer a solution.

In our opinion, the solution is obvious. Phoebe Putney Memorial Hospital, like many other Georgia public hospitals, has accumulated massive cash reserves due to years of excessive profits. The solution to Georgia's Medicaid budget problem is simple – reduce Medicaid payments to public hospitals with excess reserves and profits, and redirect these funds to other providers. Why should deserving programs suffer cuts, when our so called "not-for-profit" hospitals are sitting on MILLIONS of dollars in investment accounts – Phoebe alone reported almost $217 MILLION in the bank when it filed its 2002 Federal information return. **Shocking indeed, when you consider that Phoebe alone has enough excess funds to solve the entire State of Georgia Medicaid crisis!**

Should Georgia continue to suffer budget cuts, while our public hospitals pay CEO's excessive amounts, like Joel Wernick's $707,125 annual compensation reported by Phoebe in 2002? We say <u>NO</u>.

Phoebe and similar tax-exempt hospitals across Georgia have, in our opinion, abused the system and abused the trust of the citizens of Georgia. The system must be changed - at the State level through budget reallocation, and at the local level through change of Board and Management leadership. Send your thoughts to your elected officials today!

Comments?  PhoebeFactoids@Minister.com

# Phoebe Factoids
# FAX NEWS ALERT

Phoebe Factoids has confirmed that Phoebe was forced to withdraw its application for a Certificate of Need for the proposed ophthalmology ambulatory surgery center on Meredyth Drive. In a similar Albany case, Phoebe's own attorneys recently issued a letter which complained that a proposed privately owned diagnostic center violated Georgia's Certificate of Need statute by announcing plans for the center and proceeding with development of the drawings without first getting approval from the state. This lack of due diligence may cost Phoebe millions of dollars and is another example of administrative incompetence. This happened despite Phoebe's army of lawyers which cost almost $2.1 million dollars in legal fees in 2002, **$734,812 to Langley & Lee law firm alone**. Now the hospital owns a $40 million coffee shop. Will Phoebe still spend millions to develop its huge new "industrial medicine" complex in East Albany, even though its Meredyth complex sits virtually empty? Wouldn't the money be better spent upgrading Phoebe's main campus? Why should a hospital touting world class medicine have double occupancy rooms which place patients at increased risk for infections and medication errors? Maybe that's why Phoebe gets so many low quality ratings by an independent rating agency. Check out www.healthgrades.com, and see for yourself. World Class Medicine at Phoebe? – *Sorry, just another Phoebe marketing myth.*

But back to the $40 million coffee shop, why is the hospital in the retail restaurant business anyway? Seems like Mr. Wernick should explain that and all of his business plans, including the Cayman Islands company, Grove Pointe Indemnity, SPC, which funded a lavish administrative "junket" to London, England (June 2003) for **Joel Wernick**. Phoebe board member **Tommy Chambless** and **State Senator George Hooks**, all on Phoebe's dime. Of course, companions were included on this trip, and it was deluxe in every respect. According to our tipster, the bar tab alone for one night exceeded the annual wages for some Phoebe employees. Just why were a State Senator and his spouse along for the ride? *Another example of how Phoebe sidesteps the law and doesn't let its tax-exempt status stop it from buying political influence.*

Is it true that our community hospital has the highest rates in the state Blue Cross system? Who does Phoebe serve - the patients and community or the executives? Sadly Phoebe has become a big green parasitic machine that generates big green booty for the top executives and saps the economic strength of our community. High hospital costs hurt us all. We may never know how many industries eliminated Albany from consideration due to the excessive hospital cost as compared to other communities. It's time for a change. A new year is upon us, and our community deserves better from our hospital. Stop the corruption, let's settle for nothing less than an entirely new board, appointed by the people, serving for the people, not selected by the CEO, as a self-perpetuating gang of cronies.

For they speak not peace:
but they devise deceitful matters
against them that are quiet in the land.
Psalms 35, 20

# Phoebe Factoids
# FAX News Alert

**A Tale of Two Cities...** Ever heard of Erlanger Hospital in Chattanooga, TN? It's a large "non-profit" hospital under investigation by the Justice Department. Board members have been replaced, the CEO has resigned and the insurance company that covers the board members for "errors and omissions" has canceled their policy. What happened up there and how does it relate to Albany? What happened was that the public found out that the hospital executives & board were out of control. **One of the main reasons for the probe has been the diligence of the local newspaper, and that's what's lacking here in Albany.** Just recently, there was a big ad in the *Albany Journal* from Phoebe Putney congratulating the new owner of the Journal. The rumor around town is that Phoebe promised the Journal $60,000/year in advertising. *The Albany Herald* has a history of "looking the other way"- we hope we will not see the same from the Journal. What happens to our community when there is no avenue for dissent, there is no forum for discourse? Answer: Control, stagnation, no growth, monopolization, trouble. It's happening right here in "River City." Change is in the air, a new day is dawning on Albany. The question is where are our leaders? We should demand better of them and of our local media than to mimic the position of the Phoebe Board.

**Oops, I Did It Again...** A tipster informs us that in August 2003 Phoebe AGAIN gave $10,000 to the Ga. Alliance of Community Hospitals "political fund"- a contribution that is in direct violation of IRS rules. Phoebe made the payment thru Phoebe Health Ventures, Inc. You may remember that we earlier reported that Phoebe made a political contribution to the same organization in late 2002. Seems Mr. Wernick plans to make this an annual event...

**A New Career for Mr. Wernick?...** Rick Langley (a/k/a Phoebe's atty.) recently set up two new personal companies for Wernick - Hardscrabble Christmas Tree Farm, LLC and Hardscrabble Outdoor Outfitters, LLC. Perhaps this is to go along with his "Plantation" in Randolph County, now over 500 acres. Interestingly, he purchased a chunk of his farm from Charles Mendenhall, MD – local physician and – you guessed it - Phoebe Board member. A lot of work going on at the plantation – Oxford Construction Co. performing site work. Oxford is run by –*drum roll please*- Phoebe Board Member Bruce Melton. Wernick seems to have had another good year at our expense – he purchased another 150 Acres for his Plantation, as well as an expensive lot at Reynolds Plantation, the resort located in Greene Co. Georgia. We're surprised a CEO pulling over $707,000 in compensation (2002 Phoebe tax return) has time & energy for so many personal enterprises. A new career as "Farmer Wernick"? Nope – more likely tax shelters for a rich CEO.

**Media "To Do" List...** Will the Albany media lose all credibility by ignoring the problems the public is aware of at Phoebe? Where's the probe? How come the newspapers are looking the other way? What's the board doing about these and other improprieties, like doing business with Charlie Walker, paying millions for nursing temp. services when Mr. Walker's agency does not even contract for nurses? What about excessive executive salaries, over $3,000,000 in salaries. Excess charges, excess profits, the list goes on and on. Will a national news org. come to Albany, and break the story first?...*STAY TUNED!*

Phoebe board member



As for such as turn aside unto their crooked ways, the LORD shall lead them forth with the workers of iniquity: but peace shall be upon Israel. Psalms 125:5

# Phoebe Factoids
## News Alert — State has a $173 Million Budget Shortfall for Medicaid; Must Cut Services

In the Governor's State of the State Address, he expressed concern that Medicaid cannot be fully funded. That means those in the most need, poor children, will lose coverage. This was not unexpected. Budget cuts were known to be coming months ago. What did Phoebe administration do when it learned Medicaid cuts were looming? Screamed foul and organized a mail-in campaign for its employees trying to lobby lawmakers not to agree to the cuts. But what Phoebe didn't tell you is that it's sitting on almost $217 million in cash and securities and could not only sustain any cuts, but could actually fund the entire state shortfall. In fact, 34 of the hospitals that make up the Georgia Alliance of Community Hospitals, a lobbying organization, collectively control $2.6 **billion** in untaxed cash and securities, money that belongs to the people of Georgia. Why are Phoebe and the other hospitals holding so much of the public money and not putting it back into the State's health system? Greed and power. The more they have, the more they want. They say they need the funds to maintain AAA bond ratings. But the hospitals are county owned and any bonds they get are backed by the respective counties. And then there's the question of why do they need to borrow at all? They control a sum equal to 16% of the entire budget of the State of Georgia and they pay no taxes. Phoebe could fund its wasteful building projects without bonds. But the CEO's of these hospitals are paid on performance, and performance is measured by profits — cold hard cash. They're not encouraged to watch out for the public good, only to make money, and they use the money to preserve their goose that laid the golden egg. It's time to demand that these hospitals do the right thing. They should give back the money — say 25% of their holdings — to the state to fund health programs. After all, they made the money off the backs of the people, either through health insurance premiums or state funded programs, i.e. taxes, while the state's been generous to them by giving them a pass on taxes. The state could collect $600 million from the hospitals, fully fund the Medicaid program and Peach Care and still leave the hospitals with $2 billion in cash. Not to mention the over $6.4 billion in untaxed property assets. The public money the hospitals control is being effectively impounded, no longer are the funds serving the people, but rather, the money is working to inflate the net worth of CEO's and the bloated institutions that the CEO's control. That's the write-in message our lawmakers need to hear.



He coveteth greedily all the day long: but the righteous giveth and spareth not. The sacrifice of the wicked is abomination: how much more, when he bringeth it with a wicked mind? Proverbs 21:26,27





*Seasons Greetings*



T'was the night before Christmas, and all across Phoebe
Joel Wernick was lurking, stealing quiet and creepy,
The microphones were hung by the lockers with care,
In hopes that the faxer soon would be there.

The patients were nestled all snug in their beds,
While visions of bankruptcy danced in their heads.
And Wernick alone, a fresh wiretap to christen,
Had settled his brain for a long Christmas listen.

When out on the lawn there arose such a clatter,
He sprang from the desk to see what was the matter.
Tore open the shutters and threw up the sash,
He narrowed his eyes to see what he can,
Low and behold, an FBI van.

Out of the truck, the inspectors they leaped
And whistled and hollered and pulled a bright yellow heap.
And then, in a twinkling, Wernick heard on the ceiling
The scratching and gnawing of wires, they were peeling.
As he drew in his head, and was turning around,
Into his office, agents came with a bound.

They were dressed all in black, and carried a warrant,
They tore through the hospital in a terrible torrent.
Around all doors, and windows they'd been
They strung roll after roll of neon crime scene ribbon.
From the walls all about, they pulled wires galore,



And up on the ceilings they found other spy lore.
From the phones they yanked bugs and nasty devices,
All the things Wernick used to make him so feisty.
And when they were done, Wernick left so exposed,
He wanted to run, he knew he was hosed.
And then as he did the public perp walk,
He shuddered and shivered and began loudly to talk.
He begged doctors for mercy, but none did they offer
Instead all the heard was "let's raid the coffers."

He was dripping with sweat, in a puddle he was,
Shaking and tense, white with fear for because
His life was now over, his fiefdom he'd lost . . .
But just then he awoke, his heart frozen as frost,
It had all been a nightmare, but the message was clear,
The ghost of Christmas revealed all that was dear.
He jumped out of his bed and promised to change
Never more to harass, only good wishes would rain.
He opened his doors, and shouted out loud,
He was no longer fixed on owning the town.
Yes it was true, the Grinch's mean green machine
Would never again gouge or become more than just lean.
The hospital transformed, he guaranteed a big difference
From the image of gluttony to one of benevolence.
And from that moment on, Phoebe Putney delighted,
Merry Christmas to all, and to all a good night.

## Phoebe Phactoid

Q. Phoebe is the largest employer in Albany with over 3,000 employees. How many of the top executives are African-American? A. None. Although about 60% of Albany is African-American and most area employers have African-Americans in prominent executive positions, Phoebe's administration makes no such effort. Furthermore, Phoebe has floors where all the nurses are white and others where all the nurses are African-American. This is done to be sure a certain clientele gets the care from the kind of people they prefer. Why is this allowed? Because the Phoebe administration is essentially the same kind of good ol' boy system that ran the state back in the 60's. Is it time for a change?



"So is this your first Joel Wernick rally?"

### Phoebe Putney
### World-Class Corruption, Hometown Deception

But it was thou, a man mine equal, my
guide, and mine acquaintance. Psalm 55; 13



Have a Phoebe Factoid tip? E-mail us at PhoebeFactoids@Minister.com

# Phoebe Factoids
# FAX News Alert

## McGaw award raises the bar at Pheoebe Putney.

Foster Glendale McGaw was the founder and guiding force behind the American Hospital Supply Corporation, a multinational firm headquartered initially in Chicago. Early in the Depression, when McGaw's company was in its infancy and before he had made his fortune, Foster McGaw declared his intention to get rich and then give most of his money away. He proclaimed himself to be "only God's steward" in the managing of his own financial interests. In a typical statement of principle McGaw declared that "The more one has in talents or means or both, the more one owes to others... Sharing brings the greatest joy of all." These were not just pretty sentiments or fancy words; to McGaw they were the bedrock principles which had allowed him to be successful. Although the exact total is not known, he donated many millions of dollars to around three hundred educational, medical, religious, cultural, and social institutions. In winning the prestigious award named for the philanthropist, Phoebe has drawn much attention. Phoebe staff and administration deserve a pat on the back for winning the award. In accepting the award and posted on the American Hospital association web site (www.aha.org), Joel Wernick, CEO of Phoebe Putney Health Systems said, "We have made a commitment to upstream investment that breaks the cycle and removes barriers to health. The extent we're able to get upstream allows us to stretch scarce resources and mobilize those resources to improve the health and quality of life in Southwest Georgia." The press release goes on to say that "Phoebe's founding mission guarantees care to all, regardless of ability to pay. In 2002, the System provided $51.6 million in indigent care. Approximately one-third of the Dougherty County's population receives Medicaid, compared to a statewide average of 19 percent. Within the region's declining population, one of every three residents is under the age of 18, and nearly 50 percent of the region's children live in poverty. Half of the students do not finish high school in four years and 37 percent fail to graduate."

Phoebe Factoids wants to know how, since the Albany area is so impoverished and healthcare resources so slim, it is possible to justify paying over $700,000 to the CEO to manage a hospital in a poverty stricken area?   How is it that 5 executives earn over $3 million in wages and perks? $51 million in indigent care is not charity. Bad debt and write offs cannot be termed charity. Charity is defined by intention, one has to have declared upfront that the service was free. The Phoebe accountants cannot term bad debt — inflated to full price despite the fact that all of Phoebe's charges are discounted to various contracts  as charity. That's nothing but a lie. Phoebe was given the McGaw award for 5 projects. One of which is the Southwest Georgia Cancer Coalition, which is a regional collaboration of hospitals that has not even gotten off the ground. It is not funded and does nothing, it's a program on paper only. The other project sited was the PeachCare project, which increased six-fold the number of children in a nine county area enrolled in state-provided insurance. No wonder Phoebe encouraged its employees who qualify to get on PeachCare. Not only does the Hospital With a Heart not have to pay the health costs, but they get the benefit of favorable PR by increasing the number of kids in PeachCare. Don't be fooled. Foster McGaw would roll over in his grave if he realized an award bearing his name would be used in a PR effort to offset the truth about Phoebe's executive compensation. Like the Heisman trophy, the McGaw award is a great honor, but it does not guarantee integrity or future success.

# Phoebe Phactoid

**Q**. Why has the board of directors let Phoebe get so out of hand? **A**. There is no oversight. The board is not elected, it is <u>selected</u> by Mr. Wernick, the very person the board should be overseeing. Many of the board members have contracts with the hospital. Consequently, the board members are but in a difficult position. To question Mr. Wernick, is to bite the hand that feeds them. Take for instance Mr. Wernick's salary which is justified by the Phoebe compensation committee because it is comparable to other similarly sized Georgia hospitals. Guess what? Those hospitals are part of the Georgia Alliance of Community Hospitals and their CEO's are overpaid too. It's a statewide scam and our board was too compromised to take a stand against Joel Wernick's outrageous salary, which is twice the national average for a hospital the size of Phoebe Putney. Talk about due diligence! It's time for a new board.

W. Harry Willson, Chairman 435-4038; Lamar H. Moree, MD, Vice Chairman 888-6235; Tommy Chambless 435-9515; Laurence Crimmins, MD; W. Carl Gordon, Jr., MD 883-4562; Wilhelmina Hall 883-2029; Willie Hampton 432-7832; James A. Hotz, MD 432-1536; Tom Law 432-7496; Joel



*Phoebe Putney*
*World-Class Corruption, Hometown Deception*

# Phoebe Phactoid

Q. Are healthcare costs really something to be concerned about? I mean can we really do something to change things? A. Yes, on both counts. Phoebe controls the market. The hospital sets the rates for the whole community, industry has no options but to use Phoebe. They are raking in huge profits by gouging the public and they are paying themselves exorbitant salaries. According to the Hay report, Mr. Wernick's salary is twice the national average for hospitals with over $200 million dollars in yearly revenue. This report is available in this month's issue of Hospitals and Healthnetworks magazine (available online at www.hhnmag.com. "*A delicate balance, executive salaries*"). But the hospital belongs to the county and we must force the county to wrestle control away from the pirates who are plundering our community.



Phoebe Putney
World-Class Corruption, Hometown Deception

Case 1:07-cv-00500-WLS Document 61-2 Filed 02/03/2007 Page 16 of 21

# Phoebe Phactoid

**Q**. What about the doctors, what's their position on Phoebe? **A**. Most of the physicians have been unwilling to step up. Joel Wernick is powerful and ruthless, he will stop at nothing to rid himself of criticism, especially from a doctor, which is why you see so many good doctors come and go. To be fair, some physicians are strong supporters of Mr. Wernick, mainly because they have prospered by getting inside deals with the hospital, deals which involve a trade — a lucrative contract in exchange for blind support. However, with the help from other community leaders, the free-thinking medical community can affect a meaningful change.



*Phoebe Putney*
*World-Class Corruption, Hometown Deception*



They change the night into day: the light is short because of darkness. Job 17, 12

# Phoebe Phactoid

**Q**. Why doesn't Phoebe pay property taxes? **A**. Because the hospital was set up as a not-for-profit institution to allow the hospital to provide services to the community. However this arrangement is no longer applicable. Phoebe has $327,000,000 dollars in property and over $200 million in cash and securities and is a state sponsored monopoly and yet it doesn't pay one cent in taxes. The hospital rents office space and collects market-rate rental fees and pays no tax on the property. What would our schools and city be like with an infusion of over $4 million in new property tax revenue? What could our county and city do with the sales tax revenue?

**Q**. But wouldn't changing the tax status hurt Phoebe? **A**. No, but it sure would put a crimp in Joel Wernick's income.



*Phoebe Putney*
*World-Class Corruption, Hometown Deception*

Defend the poor and fatherless: do justice to the afflicted and needy. Deliver the poor and needy: rid them out of the hand of the wicked. Psalms 82:3,4

# Phoebe Phactoid

**Q.** Are Health Care costs something the average citizen should be concerned about? **A.** Certainly. Everybody pays, one way or another. Either we pay unnecessarily high insurance prices, or we pay out of pocket, or our area employers pay. It is a burden we all carry.

**Q.** If our healthcare costs are so out of line, why hasn't the Chamber of Commerce addressed the problem? **A.** Taking-on Phoebe is no small task and is not without repercussions. Mr. Wernick will exact his revenge, usually a pound of flesh. He also spreads Phoebe's money around as a reward for not crossing him. So he has his supporters, but the Truth shall prevail.



*Phoebe Putney*
*World-Class Corruption, Hometown Deception*

I have seen the wicked in great power, And
spreading himself like a green tree in its
native soil. Psalm 37; 35



# Phoebe Phactoid

Q. Can anyone in Phoebe administration be trusted? A. No. Sadly, Phoebe administration is so insidiously corrupted that otherwise good people cannot see that they have gone awry. They have been blinded by power and success, so much so that they are easy prey to be seduced into doing things that they would've ordinarily denounced. Unfortunately, it's not a new story.



*Phoebe Putney*
*World-Class Corruption, Hometown Deception*

Arrogant scoundrels pursue the poor; they
trap them by their cunning schemes.
Psalms 10-2

## Phoebe Phactoid

Q. Phoebe is the largest employer in Albany with over 3000 employees. How do the people that work there feel about the administration? A. they are too scared to speak out. Anybody who speaks out against the administration risks being fired. The nurses receive small raises, while the execs are well taken care of. Also consider this little known fact: employees are encouraged to enroll their children in the State's PeachCare program for kids for health coverage. That's right – the largest employer in Albany, one of the wealthiest hospitals in the state with over $200 million in tax-free cash reserves and $327 million in tax-free property would like it's employees to have healthcare coverage through the State's Medicaid program instead of providing it themselves. Hospital with a heart? A cold heart!



*Phoebe Putney*
*World-Class Corruption, Hometown Deception*



Phoebe Putney Health Systems Board



312-8855 Fax          436-3718 Fax          888-6516 FAX

# Evil
## $800,000 a year and counting



Is my compensation package too much? Heck no, I'm actually worth a lot more. Just because that fool who runs the Mayo system, with 3 hospitals, 1 in Arizona, 1 in Florida and 1 in Minnesota and manages over 16,000 employees makes less than I do, it's the complicated nature of our locale that justifies my exorbitant income — it also helps that the docs on the board are beholden to me.

# EXHIBIT

# D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| JOHN BAGNATO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION FILE |
| PHOEBE PUTNEY HEALTH | ) | NO. 1:07-CV-000030-WLS |
| SYSTEM, INC., PHOEBE PUTNEY | ) | |
| MEMORIAL HOSPITAL, INC., | ) | |
| JOEL WERNICK, | ) | |
| LANGLEY AND LEE, LLC, | ) | |
| CARL RICHARD LANGLEY, | ) | |
| LARRY J. MCCORMICK AND | ) | |
| ASSOCIATES, LLC, LARRY J. | ) | |
| MCCORMICK, WORK DYNAMICS, | ) | |
| INC., STEPHEN B. CHENOWETH, | ) | |
| JOHN DOES NO. I THOUGH V, | ) | |
| ABC CORPORATION, and | ) | |
| XYZ CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

### AMENDED VERIFIED COMPLAINT FOR DAMAGES

COMES NOW JOHN BAGNATO (hereinafter "Plaintiff") in the above-styled action, by and through undersigned counsel, and files this Amended Verified Complaint for Damages, showing the following:

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the matters in controversy arise under the Constitution and laws of the United States. This Court has pendant and/or ancillary jurisdiction to hear the state claims of Plaintiff pursuant to 28 U.S.C. § 1367.

2.

Venue in this district and division is proper under 28 U.S.C. § 1391 and United States District Court for the Middle District of Georgia Local Rule 3.4 as some or all of the Defendants are located in the Middle District of Georgia, Albany Division, and the claims arose within this district and division.

## PARTIES

3.

Plaintiff John Bagnato is a citizen of the State of Georgia and resides in Lee County.

4.

Defendant Phoebe Putney Health System, Inc. (hereinafter "PPHS") is a Georgia corporation, which may be served with process upon its registered agent, Joel Wernick, 417 Third Avenue, Albany, Georgia 31701.

5.

Defendant Phoebe Putney Memorial Hospital, Inc. (hereinafter "PPMH") is a Georgia corporation, which may be served with process upon its registered agent, Joel Wernick, 417 Third Avenue, Albany, Georgia 31701.

6.

At all times relevant hereto, Defendant Joel Wernick (hereinafter "Wernick") acted individually and/or within the course and/or employment with Defendant PPHS and Defendant PPMH. Upon information and belief, Defendant Wernick is a citizen of Georgia and a resident of Dougherty County. Defendant Wernick may be personally served with process at his place of business, 417 Third Avenue, Albany, Georgia 31701.

7.

Defendant Langley & Lee, LLC (hereinafter "Langley & Lee") is a Georgia limited liability company, which may be served with process upon its registered agent, C. Richard Langley, 1604 W. Third Avenue, Albany, Georgia 31707.

8.

At all times relevant herein, Defendant Carl Richard Langley (hereinafter "Langley") acted individually and/or within the course of employment with or membership in Defendant Langley & Lee. Upon information and belief,

Defendant Langley is citizen of Georgia and resident of Dougherty County. Defendant Langley may be personally served at his place of business, 1604 W. Third Avenue, Albany, Georgia 31707.

9.

Defendant Larry J. McCormick and Associates, LLC (hereinafter "McCormick & Associates") is an Arizona limited liability company, which may be served through its statutory agent, James R. Hart II, 1839 S Alma School Road, #354, Mesa, Arizona, 85210.

10.

At all times relevant hereto, Defendant Larry J. McCormick (hereinafter "McCormick") acted individually and/or within the course of employment with or membership in Defendant McCormick & Associates. Upon information and belief, Defendant McCormick is a citizen of Arizona and a resident of Maricopa County. Defendant McCormick may be personally served at his residence, 9628 West Redbird Road, Peoria, Arizona 85383.

11.

Defendant Work Dynamics, Inc. (hereinafter "Work Dynamics") is a foreign corporation organized and existing under the laws of the State of Missouri and may

be served with process upon its registered agent, James M. Ramsey, 9233 Ward Parkway, Suite 125, Kansas City, Missouri 64114.

12.

At all times relevant hereto, Defendant Stephen B. Chenoweth (hereinafter "Chenoweth") acted individually and/or within the course of employment with Defendant Work Dynamics. Upon information and belief, Defendant Chenoweth is a citizen of Arizona and is a resident of Maricopa County. Defendant Chenoweth may be personally served at his residence, 8915 West Morrow Drive, Peoria, Arizona 85382.

13.

Defendants John Doe I through V are individuals who acted as agents or on behalf of one or more of the named Defendants herein and/or other individuals whose correct identities are unknown and who are subject to the jurisdiction and venue of this Court as joint tortfeasors as provided by law.

14.

At all times relevant herein, Defendants John Doe I through V were employees, representatives, and/or agents of named Defendants and/or were individuals who participated with the named Defendants in depriving Plaintiff of

his constitutional rights and other rights and/or engaged in conduct violative of Plaintiff's constitutional and other rights.

15.

Defendant ABC Corporation is a corporation, partnership, limited liability company or other entity whose correct identity is unknown and that is subject to the jurisdiction and venue of this Court as a joint tortfeasor as provided by law.

16.

Defendant ABC Corporation is a corporation, partnership, limited liability company or other entity whose correct identity is unknown and which participated with the named Defendants in depriving Plaintiff of his constitutional rights and other rights and/or engaged in conduct violative of Plaintiff's constitutional and other rights.

17.

Defendant XYZ Corporation is a corporation, partnership, limited liability company or other entity whose correct identity is unknown and that is subject to the jurisdiction and venue of this Court as a joint tortfeasor as provided by law.

18.

Defendant XYZ Corporation is a corporation, partnership, limited liability company or other entity whose correct identity is unknown and which participated

with the named Defendants in depriving Plaintiff of his constitutional rights and other rights and/or engaged in conduct violative of Plaintiff's constitutional and other rights.

## STATEMENT OF FACTS

19.

Plaintiff hereby reasserts and re-alleges the allegations contained in paragraphs one (1) through eighteen (18) above as if fully set forth herein.

20.

Plaintiff authored several anonymous facsimiles concerning matters of public interest and concern from September, 2003 through March, 2004 (hereinafter "Phoebe Factoids").

21.

The Phoebe Factoids provided the community of Albany, Dougherty County, Georgia, with information on, among other things, irresponsible and improper conduct by those controlling and directing Defendants PPHS and PPMH – a hospital entrusted with public funds.

22.

The Phoebe Factoids included the documents attached hereto as Exhibit "A" and are incorporated by reference herein.

23.

In an effort to determine the identity of the authors of the Phoebe Factoids, on or about October 7, 2003, Defendants PPHS, PPMH, Wernick, Langley & Lee and Langley employed private investigators, Defendants McCormick, Chenoweth, Work Dynamics and McCormick & Associates (hereinafter referred to collectively as the "Investigators").

24.

At all times relevant to this Complaint, the aforementioned Investigators were not licensed to engage in private investigation within the State of Georgia.

25.

Defendants, on their own, failed to identify the author of and/or the individual or entity sending the Phoebe Factoids.

26.

In an effort to obtain material and information they had failed to obtain through their own efforts, the Defendants fraudulently and through misrepresentation procured the assistance of the Dougherty County District Attorney and told District Attorney Kenneth Hodges (hereinafter "Hodges") and/or his agents that United States Congressman Sanford Bishop, among others, was a

"victim" of harassing telephone calls, referring to Congressman Bishop's receipt of the Phoebe Factoids.

27.

Congressman Bishop never considered the facsimiles harassing and never sought to report the receipt of the Phoebe Factoids to the Dougherty County District Attorney.

28.

Defendants solicited Hodges and/or his agents to investigate the Phoebe Factoids as a favor to Defendants.

29.

In order to procure Hodges' and the Dougherty County District Attorney's Office's cooperation, Defendant PPHS, PPMH, and Wernick offered property belonging to Defendant PPMH to the Child Abuse Felony Prosecution Unit of the Dougherty County District Attorney's Office.

30.

At the request of Defendants, based in whole or in part upon the false and fraudulent information provided to the Dougherty County District Attorney's Office by Defendants, Hodges and/or his agents, over an approximate six month period, sent grand jury subpoenas to BellSouth, America OnLine, Sprint, Alltel,

Exact Advertising and possibly other individuals and/or entities (hereinafter "Grand Jury Subpoenas").

31.

The Dougherty County District Attorney's Office received records responsive to the Grand Jury Subpoenas.

32.

The Dougherty County District Attorney's Office provided the information it received in response to the Grand Jury Subpoenas to Defendants or some of them.

33.

One or more of the Defendants financed the costs associated with the Dougherty County District Attorney's Office investigation, including but not limited to the information and/or materials received in response to the Grand Jury Subpoenas.

34.

Defendants exerted their influence over the Dougherty County District Attorney's Office and Hodges to obtain the information and/or materials received in response to the Grand Jury Subpoenas.

35.

Defendants Langley, Langley & Lee, and the Investigators at the direction of Defendants PPHS, PPMH, and Wernick and with the authorization of the Dougherty County District Attorney's Office, used the information and/or materials received in response to the Grand Jury Subpoenas to investigate Plaintiff and other citizens, including, but not limited to, Charles Rehberg (hereinafter "Rehberg").

36.

At all relevant times, Rehberg worked for Plaintiff's surgical practice, Albany Surgical, P.C. (hereinafter "Albany Surgical").

37.

Plaintiff is a member of and/or partner in Albany Surgical.

38.

At Albany Surgical Rehberg was assigned a computer that was connected to Albany Surgical's computer network (hereinafter "Albany Surgical Computer").

39.

The Albany Surgical Computer was owned by Albany Surgical, P.C.

40.

Shortly after Defendants PPMH and PPHS obtained the services of the Investigators, Plaintiff and Rehberg, through the Albany Surgical Computer, received the following e-mail communications containing a suspicious attachment that is consistent with software which would allow a person to gain access to information from the e-mail recipient's computer from August 3, 2004 until September 9, 2004:

(a)   E-mail purporting to be sent by gsb@cliffordlaw.com to rehbergc@aol.com on August 17, 2004 at 4:05:55 p.m. Eastern Standard Time;

(b)   E-mail purporting to be sent by noreply@aol.com to rehbergc@aol.com on August 3, 2004 at 5:09:06 p.m. Eastern Standard Time;

(c)   E-mail purporting to be sent by MAILER-DAEMON@aol.com to rehbergc@aol.com on August 3, 2004 at 8:16:55 p.m. Eastern Standard Time;

(d)   E-mail purporting to be sent by sab@www.jamsadr.com to rehbergc@aol.com on August 5, 2004 at 11:53:08 p.m. Eastern Standard Time;

(e)    E-mail    purporting    to    be    sent    by    noreply@aol.com    to rehbergc@aol.com on August 9, 2004 at 1:21:28 p.m. Eastern Standard Time;

(f)    E-mail purporting to be sent by MAILER-DAEMON@aol.com to rehbergc@aol.com on August 17, 2004 at 1:06:29 p.m. Eastern Standard Time;

(g)    E-mail purporting to be sent by MAILER-DAEMON@aol.com to rehbergc@aol.com on August 19, 2004 at 1:34:50 p.m. Eastern Standard Time;

(h)    E-mail purporting to be sent by susanacahill@comcast.net to rehbergc@aol.com on August 24, 2004 at 4:35:53 p.m. Eastern Standard Time;

(i)    E-mail    purporting    to    be    sent    by    noreply@aol.com    to rehbergc@aol.com on August 25, 2004 at 2:15:08 p.m. Eastern Standard Time;

(j)    E-mail    purporting    to    be    sent    by    noreply@aol.com    to rehbergc@aol.com on August 26, 2004 at 2:07:06 p.m. Eastern Standard Time;

(k)     E-mail  purporting  to  be  sent  by  sab@my.webmd.com  to rehbergc@aol.com on August 30, 2004 at 4:34:13 p.m. Eastern Standard Time;

(l)     E-mail          purporting          to          be          sent          by sab@www.easyeverydaycooking.com.au  to  rehbergc@aol.com  on  August 31, 2004 at 3:51:01 p.m. Eastern Standard Time;

(m)    E-mail  purporting  to  be  sent  by  no  fgi@zimmreed.com     to rehbergc@aol.com on September 2, 2004 at 11:59:43 a.m. Eastern Standard Time;

(n)     E-mail  purporting  to  be  sent  by  doctor@lawdoctor.com  to rehbergc@aol.com on September 8, 2004 at 7:39:35 p.m. Eastern Standard Time; and

(o)     E-mail  purporting  to  be  sent  by  MAILER-DAEMON@aol.com  to rehbergc@aol.com on September 9, 2004 at 1:45:28 p.m. Eastern Standard Time.

The  above  identified  e-mail  communications  shall  hereinafter  be  referred  to  as "Fraudulent E-Mails."

41.

Plaintiff was able to determine that each of the Fraudulent E-Mails was sent by 186.muaa.phnz.sndgcau2.dsl.att.net from the IP address 12.99.216.186 in Phoenix, Arizona.

42.

On or about September 9, 2004, legal counsel, representing Rehberg told Defendant Langley to have Defendants' Investigators cease sending the Fraudulent E-mails. Subsequent to that conversation, neither Plaintiff nor Rehberg received any further Fraudulent E-mails from the aforementioned Phoenix, Arizona IP address.

43.

Neither Plaintiff, Albany Surgical, P.C. nor Rehberg, gave Defendants permission or authority to access any information on computers they owned and/or possessed.

44.

On or about November 3, 2003, Plaintiff received an e-mail message transmitted or transferred from the e-mail address of johnsdowe@yahoo.com stating: "I got some good stuff on the power brokers at phoebe. From W and his

white loving self to other keys in the org as well as some good financial stuff. phoebe employee" (hereinafter "November 3, 2003 E-Mail").

45.

Some or all Defendants obtained the contents of the November 3, 2003 E-Mail, disclosed the November 3, 2003 E-mail to others, and used the November 3, 2003 E-mail to determine Plaintiff's identity and/or the identity of other persons who communicated with Plaintiff using e-mail messages.

46.

Some or all Defendants, using the same means used to obtain the November 3, 2003 E-Mail, obtained the contents of other e-mail communications between Plaintiff and/or his associates and other persons, disclosed the contents of those e-mail communications to others, and used the contents thereof to determine Plaintiff's identify and/or the identity of other persons who communicated with Plaintiff using e-mail messages.

47.

Following their receipt of the information and materials obtained by the Dougherty County District Attorneys Office, in response to the Grand Jury subpoenas, Defendants disclosed the records provided by the Dougherty County District Attorney's Office to others and/or used said records to identify electronic

- 16 -

communications transmitted and/or received from March 21 to March 22, 2004, by Plaintiff's telephone number "(229) 343-8116."

48.

In furtherance of Defendants continued efforts to identify the author(s) of the Phoebe Factoids and its effort to thwart the dissemination to the public of irresponsible and improper conduct of the Defendants, Defendants offered Rehberg civil immunity and criminal immunity for information against Plaintiff.

49.

Defendant PPHS filed a lawsuit against Rehberg and other alleged co-conspirators for authoring and disseminating the information contained in the Phoebe Factoids.

50.

In response, Rehberg filed a Motion to Dismiss the complaint pursuant to the Strategic Litigation Against Public Participation statute.

51.

In the face of the Motion to Dismiss, Defendant PPHS dismissed the complaint against Rehberg.

- 17 -

52.

Defendants retaliated against Plaintiff and others and sought to punish them by further manipulation of the criminal justice system and, utilizing false and fraudulent information, sought and obtained an indictment against Plaintiff for six counts of harassing phone calls, one count of Aggravated Assault and one count of Burglary on or about December 14, 2005 (hereinafter "First Indictment").

53.

The First Indictment was dismissed on February 16, 2006.

54.

Defendants continued their manipulation of the system and their retaliation against Plaintiff and obtained a second indictment against Plaintiff for five counts of harassing phone calls and one count of Simple Assault on or about February 16, 2006 (hereinafter "Second Indictment").

55.

The Second Indictment was also dismissed.

56.

On March 1, 2006, Defendants, once again, continued their manipulation of the system and their retaliation against Plaintiff and obtained a third indictment

against Plaintiff for five counts of harassing telephone call and one count of simple assault (hereinafter "Third Indictment").

57.

On May 1, 2006, the Honorable Harry J. Altman dismissed the charges of harassing telephone calls holding "the conduct set forth in the indictment is not a violation of the statute, as alleged." The claim of simple assault was also dismissed for failure to give the Plaintiff sufficient notice of the charge.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1983
## RETALIATION FOR SPEECH ON MATTERS OF PUBLIC CONCERN

58.

Plaintiffs hereby reassert and re-allege the allegations contained in paragraphs one (1) through fifty-seven (57) above as if fully set forth herein.

59.

Plaintiff authored and disseminated matters of public interest and concern, the Phoebe Factoids. Such activity is protected by the First Amendment of the U.S. Constitution.

60.

The process of investigating alleged criminal activity reported to the Dougherty County District Attorney's Office is traditionally the exclusive

prerogative of the Dougherty County District Attorney's Office or other law enforcement agencies, divisions of the State of Georgia.

61.

The Defendants usurped a public function by undertaking the investigation of Plaintiff and commandeering the Office of the Dougherty Cuonty Distirct Attorney.

62.

At all times relevant hereto and in the commission of the wrongful acts as delineated above, the Defendants acted under color of state law.

63.

The actions of Defendants in knowingly initiating and/or performing the entire investigation against Plaintiff – based upon false and fraudulent information, which led to the First, Second, and Third Indictments constitutes unlawful retaliation against Plaintiff for speaking out about and disseminating Defendants PPHS, PPMH, and Wernick's public and/or non-privileged financial information.

64.

The above acts and activities on the part of Defendants have, in violation of 42 U.S.C. § 1983, restrained, coerced, and denied Plaintiff his right to freedom of

speech, protected and secured by the First and Fourteenth Amendments to the United States Constitution.

65.

As a proximate result of Defendants' course of unlawful and retaliatory treatment, Plaintiff has suffered consequential damages.

66.

Plaintiff is, therefore, entitled to compensatory damages pursuant to 42 U.S.C. § 1983.

67.

Plaintiff's Verification, pursuant to O.C.G.A. § 9-11-11.1, is attached hereto and incorporated herein as Exhibit "1."

## COUNT II
### DISCLOSURE AND USE OF TELEPHONE COMMUNICATIONS IN VIOLATION OF 18 U.S.C. § 2511

68.

Plaintiff hereby reasserts and re-alleges the allegations contained in paragraphs one (1) through sixty-seven (67) above as if fully set forth herein.

69.

The transmissions or transfers of signs, signals, sounds, data, or intelligence to others to initiate telephone communications are "electronic communications"

- 21 -

within the meaning of 18 U.S.C.A. § 2510(12) (hereinafter "Telephone Communications"), the transmission or transfer of which affect interstate and foreign commerce.

70.

Telephone Communications initiated to others qualifies as "contents" within the meaning of 18 U.S.C.A. § 2510(8).

71.

In violation of 18 U.S.C. § 2511(1)(c), some or all Defendants intentionally disclosed to other Defendants and/or other persons, the contents of Telephone Communications transferred by Plaintiff, knowing or having reason to know that said information was obtained through the interception of an electronic communication in violation of 18 U.S.C. 2511.

72.

In violation of 18 U.S.C. § 2511(1)(d), some or all Defendants intentionally used, the contents of Telephone Communications transferred by Plaintiff, knowing or having reason to know that said information was obtained through the interception of an electronic communication in violation of 18 U.S.C. 2511.

73.

Plaintiff qualifies as an "aggrieved person" within the meaning of 18 U.S.C. § 2510(11).

74.

As a direct and proximate consequence of Defendants' violations of 18 U.S.C. § 2511(1)(c), and 18 U.S.C. § 2511(1)(d), Plaintiff has been damaged and is entitled to an award of civil remedies authorized under 18 U.S.C. § 2520 including, but not limited to, actual damages, profits made by the Defendants as a result of their violation, statutory damages in the amount of the greater of $100.00 a day or $10,000.00, punitive damages, and reasonable attorney's fees and other litigation costs reasonably incurred.

## COUNT III
## MALICIOUS PROSECUTION

75.

Plaintiff hereby reasserts and re-alleges the allegations contained in paragraphs one (1) through seventy-four (74) above as if fully set forth herein.

76.

Defendants, acting alone and/or in concert, engaged in and/or committed the unlawful act of malicious prosecution when in violation of O.C.G.A. § 51-7-40,

some or all Defendants intentionally instigated the prosecution of Plaintiff and others for criminal offenses contained in the First, Second and Third Indictments with malice and without probable cause.

77.

Plaintiff's prosecution under each of the First, Second and Third Indictments terminated in favor of the Plaintiff.

78.

As a result of the Defendants' violation of O.C.G.A. § 51-7-40, Plaintiff has suffered injuries for which he is entitled to recover any and all damages authorized under O.C.G.A. § 51-7-47 and Georgia law.

## COUNT IV
## IDENTITY FRAUD

79.

Plaintiff hereby reasserts and re-alleges the allegations contained in paragraphs one (1) through seventy-eight (78) above as if fully set forth herein.

80.

Defendants, acting alone and/or in concert, engaged in and/or committed the unlawful act of identity fraud in violation of O.C.G.A § 16-9-121 when, without the authorization or permission of Plaintiff and with the intent to appropriate resources of Plaintiff to their own use, they intentionally obtained identifying

information of Plaintiff to assist in accessing the resources of Plaintiff and in otherwise violating Plaintiff's right to privacy and other rights secured by the United States Constitution and the Constitution of the State of Georgia.

81.

Defendants, acting alone and/or in concert, engaged in and/or committed the unlawful act of identity fraud in violation of O.C.G.A § 16-9-121 when, without the authorization or permission of Plaintiff and with the intent to appropriate resources of Plaintiff to their own use, they intentionally accessed or attempted to access the resources of Plaintiff through the use of identifying information and otherwise violated Plaintiff's right to privacy and other rights secured by the United States Constitution and the Constitution of the State of Georgia.

82.

Plaintiff qualifies as a "consumer victim" under O.C.G.A. § 16-9-120(3) and O.C.G.A. § 16-9-130.

83.

Plaintiff has suffered injuries and damages as a direct and proximate consequence of Defendants' actions and therefore is entitled to recover three times actual damages and an award of general damages, punitive damages, and

reasonable attorney's fees and expenses of litigation incurred in connection with this action under O.C.G.A. § 16-9-130.

**COUNT V**
**VIOLATION OF THE GEORGIA**
**COMPUTER SYSTEMS PROTECTION ACT**

84.

Plaintiff hereby reasserts and re-alleges the allegations contained in paragraphs one (1) through eighty-three (83) above as if fully set forth herein.

85.

For the purpose of alleging the violations of the Georgia Computer Systems Protection Act contained herein, the terms and phrases contained and defined in O.C.G.A. § 16-9-92 are incorporated by reference.

86.

Defendants, acting alone or in concert, engaged in and/or committed the unlawful act of computer invasion of privacy (O.C.G.A. § 16-9-93(c)) when Defendants used a computer or computer network with the intent of examining personal data relating to Rehberg and/or Plaintiff with the knowledge that the examination was without the authority of Rehberg and/or Plaintiff.

87.

Defendants, acting alone or in concert, engaged in and/or committed the unlawful act of computer trespass when in violation of the Georgia Computer Systems Protection Act (O.C.G.A. § 16-9-93(b)) Defendants used a computer or computer network with the intention of deleting and/or removing, temporarily and/or permanently, computer programs and/or data from a computer or computer network owned and/or possessed by Plaintiff and/or Rehberg with knowledge that such use was without the authority of Plaintiff and/or Rehberg.

88.

Defendants, acting alone or in concert, engaged in and/or committed the unlawful act of computer trespass when, in violation of the Georgia Computer Systems Protection Act (O.C.G.A. § 16-9-93(b)), Defendants used a computer or computer network with the intention of obstructing, interrupting and/or interfering with the use of a computer program or data installed and/or contained within a computer or computer network owned and/or possessed by Plaintiff and/or Rehberg with knowledge that such use was without the authority of Plaintiff and/or Rehberg.

89.

Defendants, acting alone or in concert, engaged in and/or committed the unlawful act of computer trespass when, in violation of the Georgia Computer Systems Protection Act (O.C.G.A. §16-9-93(b)), Defendants used a computer or computer network with the intention of altering, damaging, and/or in causing the malfunction of a computer and/or computer network owned and/or possessed by Plaintiff and/or Rehberg, or a computer program installed and/or contained therein, with knowledge that such use was without the authority of Plaintiff and/or Rehberg.

90.

As a direct and proximate consequence of Defendants' actions, Plaintiff has suffered injuries and damages and is entitled to recover damages including but not limited to Plaintiff's lost profits, Plaintiff's expenditures, the costs of this suit and any and all damages authorized under O.C.G.A. § 16-9-93(g) and Georgia law.

## COUNT VI
## GEORGIA RICO ACT VIOLATIONS

91.

Plaintiff hereby reasserts and re-alleges the allegations contained in paragraphs one (1) through ninety (90) above as if fully set forth herein.

92.

Defendants each qualify as a "person" within the meaning of O.C.G.A. § 16-14-4, Georgia's Civil Racketeer Influenced and Corrupt Organizations Act.

93.

Defendants constitute an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6) (hereinafter "Enterprise") and are employed by or associated with the Enterprise.

94.

Defendants, acting alone or in concert, violated O.C.G.A. § 16-10-20 when they knowingly and willfully made false, fictitious and fraudulent statements to Hodges and/or the Dougherty County District Attorney's Office, indicating that any recipient of the Phoebe Factoids was bothered by, harassed or otherwise felt that they were a "victim."

95.

Defendants, acting alone or in concert, violated O.C.G.A. § 16-10-20 when they knowingly and willfully made false, fictitious and fraudulent statements to the Dougherty County Grand Jury that returned the First Indictment through Hodges and/or the Dougherty County District Attorney's Office or through Defendants' influence exerted over same and/or, upon information and belief, directly.

96.

Defendants, acting alone or in concert,  violated O.C.G.A. § 16-10-20 when they knowingly and willfully made false, fictitious and fraudulent statements to the Dougherty County Grand Jury that returned the Second Indictment through Hodges and/or the Dougherty County District Attorney's Office or through Defendants' influence exerted over same and/or, upon information and belief, directly.

97.

Defendants, acting alone or in concert, violated O.C.G.A. § 16-10-20 when they knowingly and willfully made false, fictitious and fraudulent statements and representations to the Dougherty County Grand Jury that returned the Third Indictment through Hodges and/or the Dougherty County District Attorney's Office or through Defendants' influence exerted over same and/or, upon information and belief, directly.

98.

At all relevant times, the proceedings before the Dougherty County Grand Jury wherein the First, Second and Third Indictments were issued were and are matters within the exclusive jurisdiction of the Dougherty County District Attorney's office, a political subdivision of this state.

99.

Defendants, acting alone or in concert, engaged in and/or committed the unlawful act of influencing witnesses in violation of O.C.G.A. § 16-10-93 when, with intent to deter Rehberg from testifying freely, fully, and truthfully before a grand jury, offered Rehberg, civil and criminal immunity in exchange for his cooperation in the investigation of Plaintiff's identity.

100.

The Defendants committed, attempted to commit, and/or solicited, coerced, or intimidated other persons to commit the actions described herein in violation of O.C.G.A. §§ 16-9-120, 16-9-93, 16-10-20, and 16-10-93.

101.

Each violation qualifies as "racketeering activity" under O.C.G.A. § 16-14-3(9) (hereinafter "Defendants' Racketeering Activities").

102.

Defendants' Racketeering Activities constitute two or more acts of racketeering activity establishing a pattern of racketeering activity under O.C.G.A. § 16-14-3(8) having the same or similar intent, result, accomplices and/or methods of commission (hereinafter "Defendants' Pattern of Racketeering Activity").

103.

In violation of O.C.G.A. § 16-14-4(a), Defendants acquired and/or maintained, directly and/or indirectly, an interest in and control over Plaintiff's private phone records and/or other records, information, and personal property of Plaintiff through Defendants' Pattern of Racketeering Activity.

104.

In violation of O.C.G.A. § 16-14-4(a), Defendants maintained, directly and/or indirectly, an interest in and control over the Enterprise through Defendants' Pattern of Racketeering Activity.

105.

In violation of O.C.G.A. § 16-14-4(b), Defendants conducted and/or participated, directly and/or indirectly, in the Enterprise through Defendants' Pattern of Racketeering Activity.

106.

In violation of O.C.G.A. § 16-14-4(c), Defendants conspired and/or endeavored to acquire and/or maintain, directly and/or indirectly, possession and control over the Plaintiff's private phone records and/or other records, information, and personal property of the Plaintiff through Defendants' Pattern of Racketeering Activity.

107.

In violation of O.C.G.A. § 16-14-4(c), Defendants conspired and/or endeavored to maintain, directly and/or indirectly, an interest in and control over the Enterprise through Defendants' Pattern of Racketeering Activity and the proceeds derived therefrom.

108.

In violation of O.C.G.A. § 16-14-4(c), Defendants conspired and/or endeavored to conduct and/or participate in the Enterprise, directly and/or indirectly, through Defendants' Pattern of Racketeering Activity.

109.

As a direct and proximate consequence of Defendants' actions, Plaintiff has been damaged and is entitled to recover treble damages, punitive damages and attorneys' fees, costs of investigation and litigation costs authorized by O.C.G.A. § 16-14-1 et seq. and Georgia law.

## COUNT VII
## GEORGIA CONSTITUTIONAL CLAIMS

110.

Plaintiff hereby reasserts and re-alleges the allegations contained in paragraphs one (1) through one hundred nine (109) above as if fully set forth herein.

111.

At all times relevant to this Complaint and as described above, Defendants were acting under color of law.

112.

Defendants, in initiating and/or performing the entire investigation against Plaintiff that led to the First, Second, and Third Indictments, retaliated against Plaintiff for the lawful exercise of his constitutional right to free speech on matters of public concern, in violation of Plaintiff's rights under Article I, § 1, ¶ 5 of the Constitution of the State of Georgia.

113.

As a proximate result of Defendants' course of unlawful and retaliatory treatment, Plaintiff has suffered consequential damages.

114.

Plaintiff's Verification, pursuant to O.C.G.A. § 9-11-11.1, is attached hereto and incorporated herein as Exhibit "1."

# COUNT VIII
## PUNITIVE DAMAGES

### 115.

Plaintiff hereby reasserts and re-alleges the allegations contained in paragraphs one (1) through one hundred fourteen (114) above as if fully set forth herein.

### 116.

Defendants' conduct as described above, amounts to willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care that would raise the presumption of conscious indifference to the consequences according to O.C.G.A. § 51-12-5.1(b).

WHEREFORE, Plaintiff prays for the following relief:

(a)     that all Defendants be served with process;

(b)     that Plaintiff have a trial by jury of all issues in this action;

(c)     that Plaintiff have and recover from Defendants an amount shown by the evidence to compensate Plaintiff for the Counts enumerated herein;

(d)     that Plaintiff have and recover from Defendants treble damages authorized by the evidence under O.C.G.A. § 16-9-130, O.C.G.A. § 16-14-1 et seq. and Georgia law;

(e)     that Plaintiff have and recover from Defendants statutory damages authorized under 18 U.S.C. § 2520;

(f)     that Plaintiff have and recover from Defendants their costs, litigation expenses, and attorney's fees in the present action pursuant to 42 U.S.C. § 1988, 18 U.S.C. § 2520, O.C.G.A. § 16-9-93, O.C.G.A. § 16-9-130, O.C.G.A. § 16-14-1 et seq. and Georgia law;

(g)     that Plaintiff have and recover from Defendants punitive damages pursuant to O.C.G.A. § 51-12-5.1 in an amount shown by the evidence to punish, penalize and deter Defendants; and

(h)     that Plaintiff have such other and further relief to which this Honorable Court deems justice to demand.

Respectfully submitted this 23rd day of March, 2007.

**FINLEY & BUCKLEY, PC**

s/ Timothy J. Buckley III
Timothy J. Buckley III
Georgia State Bar No. 092913
2931 North Druid Hills Road
Suite C
Atlanta, Georgia 30329
(404) 320-9979
(404) 320-9978 (facsimile)
tbuckley@finbuck.com

**MCCALL PHILLIPS WILLIAMS
& POWELL, LLC**

s/ Ralph W. Powell
Henry E. Williams
Georgia State Bar No. 762350
Ralph W. Powell, Jr.
Georgia State Bar No. 586370
Alex J. Kaplan
Georgia State Bar No. 406776
Post Office Box 71747
Albany, Georgia 31708-1747
(229) 888-2600
(229) 888-3330 (facsimile)
hwilliams@mccallphillips.com
rpowell@mccallphillips.com
akaplan@mccallphillips.com

Attorneys for Plaintiff


## CERTIFICATION BY ATTORNEY SUBMITTING ELECTRONIC FILING

*I certify that the originally executed document contains the signatures of all*

*filers indicated herein and therefore represents consent for filing of this document.*

By:   s/ Timothy J. Buckley III
Timothy J. Buckley III
Georgia State Bar No. 092913
2931 North Druid Hills Road, Suite C
Atlanta, Georgia 30329
(404) 320-9979
(404) 320-9978 (facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JOHN BAGNATO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    **CIVIL ACTION FILE** |
| | )    **NO. 1:07-CV-000030-WLS** |
| PHOEBE PUTNEY HEALTH | ) |
| SYSTEM, INC., PHOEBE PUTNEY | ) |
| MEMORIAL HOSPITAL, INC., | ) |
| JOEL WERNICK, | ) |
| LANGLEY & LEE, LLC, | ) |
| CARL RICHARD LANGLEY, | ) |
| LARRY J. MCCORMICK AND | ) |
| ASSOCIATES, LARRY J. | ) |
| MCCORMICK, WORK DYNAMICS, | ) |
| INC., STEPHEN B. CHENOWETH, | ) |
| JOHN DOES NO. I THORUGH V, | ) |
| ABC CORPORATION, and | ) |
| XYZ CORPORATION, | ) |
| | ) |
|     Defendants. | ) |

## O.C.G.A. § 9-11-11.1 VERIFICATION

Personally appeared before the undersigned attesting officer, duly
authorized to administer oaths, and, who, after being duly sworn, on oath state and
depose that they are, respectively, JOHN BAGNATO, Plaintiff, and RALPH W.
POWELL, JR. and TIMOTHY J. BUCKLEY III, Plaintiff's attorneys in the
above-styled action; that they have read the claims set forth in the Complaint in

this matter; that to the best of their knowledge, information, and belief formed

after reasonable inquiry, the claims are well grounded in fact and are warranted by

existing law or a good faith argument for the extension, modification, or reversal

of existing law; that the act(s) forming the basis for the claims are not privileged

communications under O.C.G.A. § 51-5-7(4); and that the claims are not

interposed for any improper purpose whatsoever.

This 23rd day of March, 2007.

_____
JOHN BAGNATO, M.D., Plaintiff

_____
RALPH W. POWELL, JR., ESQ.
Counsel for Plaintiff

Sworn and Subscribed before me
this 22nd day of March , 2007.

_____
Notary Public
My Commission Expires:

_____
TIMOTHY J. BUCKLEY III, ESQ.
Counsel for Plaintiff

Sworn and Subscribed before me
this 23rd day of March , 2007.

_____
Notary Public
My Commission Expires:

## ATTACHMENT E DESCRIBING THE INDIVIDUALS/ENTITIES
## REFERENCED IN THE SUBPOENA

ABC:                        The American Broadcasting Company.

John Bagnato:               Plaintiff in the lawsuit pending in the Middle District of Georgia

Barrett Law Office:         Counsel to plaintiffs in the unrelated Not for Profit Litigation.

Jim Bowman:                 Private investigator retained by Charles Rehberg. Bowman was indicted three times on charges of assault and burglary by a Dougherty County grand jury.  The indictments were dismissed.  Subsequent to those dismissals, Bowman filed a lawsuit against James A. Hotz, a medical doctor in Albany Georgia, alleging that Hotz improperly encouraged the district attorney to pursue the criminal charges.

Brown & Scoccimaro:         Counsel to plaintiffs in the unrelated Not for Profit Litigation.

Stephen B. Chenoweth:       A defendant in the pending lawsuit and a former FBI agent retained by attorney Richard Langley to assist in the investigation to identify the authors of the Factoids.

Bobby Lee Cook:             Counsel for Jim Bowman in the lawsuit filed against Dr. Hotz.

Grove Pointe Indemnity:     An off-shore captive insurance company and wholly owned subsidiary of Phoebe established to provide Phoebe and its physicians better malpractice insurance physicians at lower premiums.

Peter Halmos:               Alleged multimillionaire activist known to have participated in meetings with Bagnato, Rehberg, Robert Siegfried and Scruggs.

Kindling Group:              A company that produces and sponsors documentary films.

Langley and Lee, LLC:        Counsel to Phoebe and a named defendant in the pending litigation.

Carl R. Langley:             Principal attorney, Langley and Lee, LLC, counsel to Phoebe and a named defendant in the pending litigation.

Larry J. McCormick:          A defendant in the pending lawsuit. He was retained by attorney Richard Langley to assist in the investigation into the identity of the authors of the Factoids.

Larry J. McCormick
and Associates:              Larry J. McCormick's firm.

Scruggs Law Firm:            Counsel to plaintiffs in the unrelated Not for Profit litigation filed across the country.

Taylor & Ives:               A design communication company specializing in annual reports, marketing and product literature and web site design.

Joel Wernick:                Chief Executive Officer of Phoebe and a defendant in the pending lawsuit.

Work Dynamics, Inc.:         A company retained by Phoebe to consult with Phoebe and its counsel on developing strategies to defend against the corporate campaign against Phoebe.

# EXHIBIT

# F

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| V. JOHN BAGNATO, M.D., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION |
| PHOEBE PUTNEY HEALTH | ) | FILE NO:  1:07-CV-00030-WLS |
| SYSTEM, INC., PHOEBE PUTNEY | ) | |
| MEMORIAL HOSPITAL, INC., | ) | |
| JOEL WERNICK, | ) | |
| LANGLEY AND LEE, LLC, | ) | |
| CARL RICHARD LANGLEY, | ) | |
| LARRY J. MCCORMICK, AND | ) | |
| ASSOCIATES, LLC, LARRY J. | ) | |
| MCCORMICK, WORK DYNAMICS, | ) | |
| INC.,  STEPHEN B. CHENOWETH, | ) | |
| JOHN DOES NO. I THOUGH V, | ) | |
| ABC CORPORATION, and | ) | |
| XYZ CORPORATION, | ) | |
| | ) | |
|     Defendants. | ) | |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PHOEBE PUTNEY HEALTH SYSTEM, INC.

COMES NOW V. JOHN BAGNATO, M.D., Plaintiff herein, and, pursuant to F.R.C.P. 34 propounds the following request for production of documents and things.

You are requested to produce the documents and things hereinafter set forth within thirty (30) days of the date of service upon You at the law offices of McCall, Phillips, Williams & Powell, LLC, Ralph W. Powell, P.O. Box 71747, 1101 Valley Road, Albany, GA 31708-1747, and to make such documents available for inspection and copying at such time and place.  Additionally, any electronically stored information responsive to the requests herein is to be produced in PDF, TIFF, DII or Microsoft Word format.

McCall Phillips
Williams & Powell, LLC
Attorneys at Law
Post Office Box 71747
Albany, GA 31708-1747
(229) 888-2600

In accordance with F.R.C.P. 34 and 26, You are under a duty to seasonably supplement any response to these requests which is not complete when made. You are further under a duty to seasonably supplement your response with respect to any request if You subsequently obtain documents or things requested herein.

Adopt by reference the "**DIRECTIONS AND INSTRUCTIONS**" in the Plaintiff's First Continuing Interrogatories served separately and simultaneously herewith as if stated verbatim herein.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

NOTE: The following requests for production are limited to discovering documents in your possession or control that contain information or are otherwise related to the incident(s) described in the Plaintiff's complaint (i.e., the Subject Incident, as defined in the "Directions & Instructions" contained in the Plaintiff's Interrogatories served together herewith) and are not intended to refer to or request the discovery of information or records protected under Health Insurance Portability and Accountability Act ("HIPAA").

1. Accurate copies of any and all Documents related to Financial Relationship(s) during the Relevant Time between or among You, any Defendant, any Witness, any Media, any person that served on any board of Defendant Phoebe Putney Memorial Hospital, Inc. during the Relevant Time, any person that served on any board of Defendant Phoebe Putney Health Systems, Inc. during the Relevant Time, or Albany Area Primary Health Care, Inc.

2. Accurate copies of any and all Documents wherein matters related to the Subject Incident are discussed, mentioned, referenced, or addressed in any way either directly or indirectly.

3. Accurate copies of any and all Documents related to Information Technology Protocol instituted or used by You or your Information Technology Personnel during the Relevant Time.

4. Accurate copies of any and all Documents related to Compensation to Kenneth B. Hodges, III or the office of District Attorney for Dougherty County, State of Georgia during the Relevant Time or to any Campaigns for the election of Kenneth B. Hodges, III to the office of District Attorney for Dougherty County, State of Georgia.

5. Accurate copies of any and all Documents related to Compensation for services or materials related to the Subject Incident paid or received by You, any Defendant, any Witness, or the District Attorneys offices for Dougherty or Houston Counties, State of Georgia, during the Relevant Time.

McCall Phillips
Illiams & Powell, LLC
Attorneys at Law
Post Office Box 71747
Albany, GA 31708-1747
(229) 888-2600

2

6.    Accurate copies of any and all Documents related to the Subject Incident received from the District Attorneys offices for Dougherty or Houston Counties, State of Georgia during the Relevant Time.

7.    Accurate copies of any and all Documents related to the Subject Incident supplied to the District Attorneys offices for Dougherty or Houston Counties, State of Georgia, during the Relevant Time.

Please produce and submit the foregoing items for inspections and copying to Ralph

W. Powell at Post Office Box 71747, Albany, Georgia 31708-1747, within thirty (30) days

hereafter.

This 31st day of July, 2007.

                                   McCALL PHILLIPS WILLIAMS & POWELL, LLC


                                   _____
                                   Ralph W. Powell, Jr.
                                   State Bar Number 586370

                                   _____
                                   Alex J. Kaplan
                                   State Bar Number 406776

                                   Attorneys for Plaintiff
                                   Post Office Box 71747
                                   Albany, Georgia 31708-1747
                                   (229) 888-2600

McCall Phillips
illiams & Powell, LLC
Attorneys at Law
Post Office Box 71747
Albany, GA 31708-1747
(229) 888-2600

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

V. JOHN BAGNATO, M.D.,                     )
                                           )
    Plaintiff,                             )
                                           )
v.                                         )
                                           )        CIVIL ACTION
PHOEBE PUTNEY HEALTH                        )        FILE NO: 1:07-CV-00030-WLS
SYSTEM, INC., PHOEBE PUTNEY                 )
MEMORIAL HOSPITAL, INC.,                    )
JOEL WERNICK,                              )
LANGLEY AND LEE, LLC,                       )
CARL RICHARD LANGLEY,                       )
LARRY J. MCCORMICK, AND                     )
ASSOCIATES, LLC, LARRY J.                   )
MCCORMICK, WORK DYNAMICS,                   )
INC., STEPHEN B. CHENOWETH,                 )
JOHN DOES NO. I THOUGH V,                   )
ABC CORPORATION, and                        )
XYZ CORPORATION,                            )
                                           )
    Defendants.                            )

## PLAINTIFF'S FIRST CONTINUING
## INTERROGATORIES TO PHOEBE PUTNEY HEALTH SYSTEM, INC.

COMES NOW V. JOHN BAGNATO, M.D., Plaintiff herein, and propounds the following interrogatories to PHOEBE PUTNEY HEALTH SYSTEM, INC., pursuant to F.R.C.P. 33, to be answered fully and separately in writing by said Defendant.

These interrogatories call upon said Defendant to furnish in answer thereto such information as is available to said Defendant.

These interrogatories are expressly made continuing and after the initial response thereto is made, supplemental responses are specifically called for as authorized by F.R.C.P. 33 and 26, and each subpart thereof.

McCALL PHILLIPS
LLIAMS & POWELL, LLC
ATTORNEYS AT LAW
POST OFFICE BOX 71747
ALBANY, GA 31708-1747
(229) 888-9600

## DIRECTIONS AND INSTRUCTIONS

Wherever the following words or phrases are sued in these Interrogatories, they shall be deemed to include the required information stated as follows:

(1)    "You" and "your" shall refer to each Defendant individually and separately, and shall embrace and include all Defendants and (a) their members, officers, board members, employees, agents, servants, representatives, and private investigators and others who have obtained information for or on behalf of any Defendant; and (b) persons, members, officers, board members, employees, agents, servants, representatives, public investigators, law enforcement personnel, prosecutors and others who have obtained information for or on behalf of any Defendant;

(2)    "Identify" when used with reference to Documents or writings, shall require at a minimum the following information:

        (a)    Dates;

        (b)    General description or title;

        (c)    General purpose;

        (d)    Name of author, Publisher or bearer, if known;

        (e)    Name and address of person who is in possession of the document or writing; and

        (f)    Whether You will voluntarily produce said document for inspection and copying.

(3)    "Identify" when used with reference to person, firms or corporations, shall require at a minimum, the following information:

        (a)    Name;

McCALL PHILLIPS
ILLIAMS & POWELL, LLC
ATTORNEYS AT LAW
POST OFFICE BOX 71747
ALBANY, GA 31708-1747
(229) 888-2600

2

(b)     Address;

(c)     Telephone number;

(d)     Employer; and

(e)     Occupation.

(4)     "Person" shall be deemed to include individuals, firms, corporations, the individual member(s) or agent(s) thereof with knowledge of the requested information or otherwise.

(5)     "Documents" shall be deemed to include all records, files, memoranda, reports, notes, notations, Documents, papers, letters, writings, lists, instruments, sound recordings, photographs, cancelled checks, bank drafts, invoices, contracts; agreements; work orders; invoices; receipts; and any other intangible things whether *Created, Published, or Maintained in writing or in any electronic or digital format.*

(6)     "Correspondence" shall be deemed to include all e-mails, letters, reports, memoranda, minutes from meetings of any corporate board or body, notes, policies, manuals, protocol, or directives *whether Created, Published or Maintained in writing or in any electronic or digital format.*

(7)     "Subject Incident" is used only in the non-legal sense, i.e., the incident which gave rise to the instant claim, and, without limitation, specifically refers to the following: (a) Investigation of the Phoebe Phactoids; (b) Investigation of the authors of the Phoebe Phactoids; (c) Investigation of potential authors of the Phoebe Phactoids; (d) Investigation of the Plaintiff; (e) Investigation of Charles Rehberg; (f) Investigation of Albany Surgical; (g) Employment of Persons to investigate the Phoebe Phactoids; (h) Employment of Persons to investigate the authors of the Phoebe Phactoids; (i)

McCall Phillips
Williams & Powell, LLC
Attorneys at Law
Post Office Box 71747
Albany, GA 31708-1747
(229) 888-2600

3

Employment of Persons to investigate the authors of potential authors of the Phoebe Phactoids; (j) Employment of Persons to investigate the Plaintiff; (k) Employment of Persons to investigate Charles Rehberg; (l) Employment of Persons to investigate Albany Surgical; or (m) Investigation of any other person arising out of the Publication or Creation of the Phoebe Phactoids. "Subject Incident" is not used in any manner which would determine fault.

(8)     "Albany Surgical" shall be deemed to include Albany Surgical, P.C. and any member, officer, employee, agent, independent contractor, representative or other individual or entity associated with Albany Surgical, P.C. in any way.

(9)     "Relevant Time" means January 1, 2000 to the present.

(10)    "Publish" shall mean to Publish, disseminate, transfer, send, transport, share, forward, Received, or circulate whether *in writing or in any electronic or digital format.*

(11)    "Create" shall mean to Create, write, transcribe, dictate, initiate, develop, record, store or Maintain whether *in writing or in any electronic or digital format.*

(12)    "Receive" shall mean to receive, obtain, possess, see, hear, or view.

(13)    "Financial Relationship" shall refer to any relationship embracing any past, present or future agreement, promise, pledge or obligation to pay, exchange, transfer, or tender money, currency, funds, assets, wealth, personal property, real property, intellectual property, negotiable paper, loans, stocks, equities, bonds, ITF(s), negotiable paper, security interest, accounts, contributions, Compensation, benefit, support and any other intangible things by any means or mode.

(14)    "Compensation" shall mean the contribution, payment or transfer of possession or any interest in money, currency, funds, assets, wealth, personal property, real property,

McCALL PHILLIPS
REEVES& POWELL, LLC
ATTORNEYS AT LAW
POST OFFICE BOX 71747
ALBANY, GA 31708-1747
(229) 888-2600

4

intellectual property, negotiable paper, loans, stocks, equities, bonds, ITF(s), negotiable paper, security interest, accounts, contributions, Compensation, benefits of any kind or type, support and any other intangible things by any means or mode.

(15)    "Communication" shall refer to any and all Documents, Correspondence, conversations, discussions, utterances, references, gatherings, messages, inquiries, meetings, interviews, interrogations, examinations, speeches, or presentations by any means or mode.

(16)    "Maintain" shall refer to maintaining, recording, documenting, preserving, storing, filing, cataloging, securing, converting, protecting, processing, transmitting, retrieving or destroying any and all Documents, Communications whether *in writing or in any electronic or digital format or other recordable medium.*

(17)    "Witness" shall refer to any Person that was listed as a victim of a criminal offense in any Indictment identified in the complaint filed by the Plaintiff in the instant action.

(18)    "Information Technology Personnel" shall refer to any Person(s) that design, develop, implement, support or manage computer-based information systems, software applications or hardware used to secure, convert, store, protect, process, transmit or retrieve information or data *in any electronic or digital format or other recordable medium.*

(19)    "Information Technology Protocol" shall refer to the design, development, implementation, support or management of computer-based information systems, software applications or hardware used to secure, convert, store, protect, process, transmit or retrieve information or data *in any electronic or digital format or other recordable medium.*

McCALL PHILLIPS
ILLIAMS & POWELL, LLC
ATTORNEYS AT LAW
POST OFFICE BOX 71747
ALBANY, GA 31708-1747
(229) 888-2600

(20)    "Campaign" shall include and embrace any organized effort dedicated to promoting a specified goal by any means.

(21)    "Media" shall include and embrace any and all public relations firms or agencies, advertising firms or agencies, news publications, magazine publications, cable and non-cable television broadcasting stations, and radio broadcasting stations serving the area of Dougherty and surrounding counties, state of Georgia including without limitation WALB, WFXL, The Albany Herald Newspaper, The Albany Journal Newspaper, Gray Communications, Cumulus Communications, The Albany Magazine, The Southwest Georgia Living Magazine, Mediacom, Atlanta Journal Constitution.

(22)    The phrase "relate to" shall mean consisting of, referring to, reflecting, pertaining to, or any way logically or actually connected with the matter discussed. A document which "relates to" a given subject is any document identifying, showing, referring to, dealing with, evidencing, commenting upon, having as a subject, describing, summarizing, analyzing, explaining, detailing, outlining, defining, interpreting, or pertaining to that subject, including, without limitation, Documents referring to the presentation of other Documents.

(23)    "Phoebe Phactoids" shall refer to Documents described in the Plaintiff's complaint that were the subject of investigations by any Defendant individually or working together with any other Defendant(s), private investigators, law enforcement personnel, or prosecutors during the Relevant Time.

McCALL PHILLIPS
WILLIAMS & POWELL, LLC
ATTORNEYS AT LAW
POST OFFICE BOX 71747
ALBANY, GA 31708-1747
(229) 888-9600

6

## INTERROGATORIES

NOTE: The following interrogatories are limited to discovering information that is or may be related to the incident(s) described in the Plaintiff's complaint (i.e., the Subject Incident, as defined in the "Directions & Instructions") and, therefore, are not intended to refer to the discovery of information or records protected under Health Insurance Portability and Accountability Act ("HIPAA").

1.    Please identify any and all Financial Relationship(s) during the Relevant Time between or among You, any Defendant, any Witness, any persons that are members of any boards of Defendant Phoebe Putney Memorial Hospital, Inc., any persons that are members of any boards of Defendant Phoebe Putney Health Systems, Inc., any persons that were members of the boards of Defendant Phoebe Putney Memorial Hospital, Inc.; any persons that were members of the boards of Defendant Phoebe Putney Health Systems, Inc., or Albany Area Primary Health Care, Inc.  For each Financial Relationship identified in your response please separately identify any and all Documents related to each Financial Relationship.

2.    Please identify any and all Documents Published, Created, or Received by any Defendant wherein matters related to the Subject Incident are discussed, mentioned, referenced, or addressed in any way either directly or indirectly.

3.    Please identify any and all Communications between or among any Defendant wherein matters related to the Subject Incident are discussed, mentioned, referenced, or addressed in any way either directly or indirectly. For each Communication identified in your response please separately identify: (a) any and all Documents related each Communication, including without limitation any specific statements made in the Communication; and (b) any and all Documents related to Publishing, Creating, Receiving, or Maintaining each Communication.

4.    Please identify any and all Documents Published, Created, or Received by any Defendant or Media during the Relevant Time wherein matters related to the Subject Incident are discussed, mentioned, referenced, or addressed in any way either directly or indirectly. For each Document identified in your response please identify any and all Documents related Publishing, Creating, Receiving, or Maintaining each Document.

5.    Please identify any and all Communications between or among any Defendant and Media wherein matters related to the Subject Incident are discussed, mentioned, referenced, or addressed in any way either directly or indirectly.  For each Communication identified in your response please separately identify: (a) any and all Documents related each Communication, including without limitation any specific statements made during the Communication; and (b) any and all Documents related Publishing, Creating, Receiving, or Maintaining each Communication.

McCall Phillips
Williams & Powell, LLC
Attorneys at Law
Post Office Box 71747
Albany, GA 31708-1747
(229) 888-2600

6.      Please identify any and all Information Technology Personnel employed by You in any capacity during the Relevant Time to Maintain Documents wherein matters related to the Subject Incident were discussed, mentioned, referenced, or addressed in any way either directly or indirectly.

7.      Please identify any and all Information Technology Protocol instituted or used by You or your Information Technology Personnel during the Relevant Time to Maintain Documents wherein matters related to the Subject Incident were discussed, mentioned, referenced, or addressed in any way either directly or indirectly.

8.      Please separately identify by date and value each item of Compensation from You to any Defendant during the Relevant Time. For each item of Compensation identified in your response please separately identify any and all Documents related each item of Compensation.

9.      Please separately identify by date and value each item of Compensation from You to Kenneth B. Hodges, III during the Relevant Time or to any Campaign(s) for the election of Kenneth B. Hodges, III to the office of District Attorney for Dougherty County, State of Georgia. For each item of Compensation identified in your response please separately identify any and all Documents related each item of Compensation.

10.     Please identify any and all Documents Created, Published, or Maintained by You or any Defendant during the Relevant Time wherein matters related to the Subject Incident are discussed, mentioned, referenced, or addressed in any way either directly or indirectly.

11.     Please identify any and all Communications during the Relevant Time wherein matters related to the Subject Incident are discussed, mentioned, referenced, or addressed in any way either directly or indirectly.

        This 31st day of July, 2007.

                                        McCALL PHILLIPS WILLIAMS & POWELL, LLC


                                        Ralph W. Powell, Jr.
                                        State Bar Number 586370


                                        Alex J. Kaplan
                                        State Bar Number 406776

                                        Attorneys for Plaintiff
                                        Post Office Box 71747
                                        Albany, Georgia 31708-1747
                                        (229) 888-2600

McCALL PHILLIPS
ILLIAMS & POWELL, LLC
ATTORNEYS AT LAW
POST OFFICE BOX 71747
ALBANY, GA 31708-1747
(229) 888-2600

8